James X. Bormes
(*pro hac vice*)
Illinois State Bar No. 620268
Catherine P. Sons
(*pro hac vice*)
Illinois State Bar No. 6290805
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue, Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan
(*pro hac vice*)
Illinois State Bar No. 6273422
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com
Attorney for Plaintiff

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne Carbajal, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware Corporation.<br><br>Defendants. | Case No. 2:25-cv-00041-PHX-DJH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yvonne Carbajal, individually and on behalf of all others similarly situated as set forth herein, alleges as follows:

## NATURE OF THE ACTION

1. Defendants embedded hidden tracking pixels in emails they sent to Plaintiff and other Arizona residents.

2. The pixels are and were intentionally designed to be invisible to the naked eye, even if one knew where to look for them.

3. Defendants' hidden tracking pixels surreptitiously procured and collected records of, and information regarding, Plaintiff and Arizona residents, including time logs of their email access, whether they opened, printed or forwarder the email, the location of the resident and device used when opening or reading the email, the time they spent reading the email, the amount of times they opened the email, the IP address of the resident, the associated email addresses of the resident, and their email client type and email path data used for purposes such as linking an Arizona resident's IP address with a physical address associated with that Arizona resident.

4. Defendants did not inform Plaintiff and other Arizona residents that the emails contained hidden tracking pixels.

5. Defendants did not inform Plaintiff and other Arizona residents that the hidden tracking pixels procured, collected and tracked the records and information set forth in Paragraph 3 *supra*.

6. At no point did Defendants ever obtain Plaintiff's and other Arizona residents' authorization to procure, collect, use and track the records and information set forth in Paragraph 3 *supra*.

7. The Arizona Telephone, Utility and Communication Service Records Act (the "Act") states "[a] person shall not…[k]nowingly procure, attempt to procure, solicit or conspire with another to procure…a communication service record of any resident of

this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01.

8. The Act states "'Communication service record' includes subscriber information, including name,…electronic account identification and associated screen names,…access logs, records of a path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as…electronic mail…" Ariz. Rev. Stat. § 44-1376(1).

9. This is a class action lawsuit brought on behalf of Arizona residents under the Act. A.R.S. § 44-1376 *et seq*.

10. The Act prohibits a person from knowingly procuring and/or soliciting with another to procure a "communication service record" of any Arizona resident i) without the authorization of the person to whom the record pertains or ii) by fraudulent, deceptive or false means. A.R.S. § 44-1376.01(A)(1).

11. Plaintiff and the Class Members are Arizona residents who received and opened Defendant Lowe's emails that utilized and embedded Salesforce's tracker to obtain, collect, record, share and store, *inter alia*, their location, whether and when the email recipients opened and read emails from Lowe's, where they opened it, how long they looked at it, and whether they forwarded it.

12. By failing to receive consent from Plaintiff and the Class Members and by procuring their communication service records and information by deceptive means, Defendants did and continue to violate the Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 *et seq*.

### THE PARTIES

13. Plaintiff Yvonne Carbajal is a citizen of Arizona, residing in Maricopa County, Arizona.

14. Within the past two years, Plaintiff has frequently received and opened emails from Defendants to review promotional materials.

15. Plaintiff most recently opened one of Defendants' emails in March 2024.

16. Each time Plaintiff opened an email from Defendants, Defendants' hidden tracking pixel procured records and information from her and her computer and/or mobile phone, through the email tracking software embedded in the emails, including information and records that identified her, disclosed her location, and tracked where and when she opened, read and/or forwarded the emails.

17. Defendant Lowe's Home Centers, LLC ("Lowe's") is a North Carolina limited liability company with its principal place of business in Mooresville, North Carolina.

18. Defendant Lowe's is registered to do business in the state of Arizona as a foreign corporation.

19. Defendant Lowe's has a statutory agent authorized to accept service in Arizona.

20. Defendant Lowe's owns and/or operates 32 retail stores in the state of Arizona.

21. For digital sales in Arizona, Defendant Lowe's ships goods to Arizona residents from, *inter alia*, its stores in Arizona.

22. Defendant Salesforce, Inc. ("Salesforce") is a Delaware corporation with its principal place of business in San Francisco, California.

23. Defendant Salesforce is registered to do business in Arizona as a foreign corporation.

24. Defendant Salesforce has a statutory agent authorized to accept service in Arizona.

25. Defendant Salesforce does business throughout Arizona.

26. Defendant Salesforce sells and provides customer service relationship management software to companies doing business in and throughout Arizona, including Defendant Lowe's and government offices and agencies of the state of Arizona.

27. Defendant Salesforce employs hundreds of employees who work in Arizona.

28. Defendant Salesforce manages and operates a data center in the Phoenix, Arizona metropolitan area.

## JURISDICTION AND VENUE

29. The Court has jurisdiction over the subject matter of this Complaint because Plaintiff is a resident of Maricopa County.

30. The Court has personal jurisdiction over Defendants because, pursuant to the Arizona Constitution article XIV, section 8, by filing their articles of incorporation with the Arizona Corporation Commission and by having an authorized agent to accept service, Defendants have consented to accept service of suits that arise in Maricopa County.

31. The Court also has personal jurisdiction over Defendants because, as set forth herein, Defendants have purposefully availed themselves of the laws and benefits of doing business in this State and in Maricopa County, and Plaintiff's claims arise out of Defendants' forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this county. Additionally, Defendants knowingly and intentionally procured and collected the records and information at issue from Plaintiff's and Arizona residents' devices including their desktop computers, mobile phone and notebooks.

32. Venue is proper in this Court pursuant to A.R.S. §§ 12-401(1) and (18) because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this county.

## Facts Supporting Plaintiff's Claims

**A.     Email Spy Pixels**

33. Despite Arizona law prohibiting the practice, companies deceptively embed trackers within emails without first obtaining Arizonans' consent. Indeed, "[a]

2018 Princeton study on email tracking tested over 12,000 emails from 900 senders offering mailing list subscriptions and found that 70% contained trackers."[1]

34. These trackers are known as "spy pixels."

35. A spy pixel is typically a 1x1 (one pixel high by one pixel long) image. "The spy pixel is so small it is basically impossible to see with the naked eye."[2]

36. A spy pixel is deliberately made small and impossible to spot with the naked eye even if a person knows where to look.

37. An email spy pixel is a tiny pixel graphic used to measure various metrics while gathering information about email recipients.

38. The minuscule size of a spy pixel makes it almost invisible and enables it to blend in with the background of an email. This is intentional, as tracking pixels (i.e., spy pixels) are designed to go unseen.

39. The objective of a spy pixel is to collect information without the knowledge of the recipient of the email.

40. The spying effect is that, without the email recipient choosing to do so, the result of opening the email is to report to the sender of the email: if and when an email is read, when (and how many times) it is read, the IP address and other unique identity details of the computer or smartphone used to read the email, and from the latter, the geographical location of the recipient.

---

[1] Mikael Berner, *The Business of Email Tracking: What To Know About Spy Pixels In Your Inbox*, FORBES (Jun 9, 2022), https://www.forbes.com/sites/forbestechcouncil/2022/06/09/the-business-of-email-tracking-what-to-know- about-spy-pixels-in-your-inbox/?sh=2084ee793fec.

[2] Becky Willeke, *Spy pixels are hiding in your emails; so what can you do about it?*, FOX 2 NOW (Mar. 15, 2021), https://fox2now.com/news/tech-talk/spy-pixels-are-hiding-in-your-emails-so-what-can-you-do-about-it/.

41. To activate a spy pixel, recipients need only to open the email.

B. **Defendants' Spy Pixel Tracking**

42. In 2013, Defendant Salesforce acquired the customer engagement and email tracking company ExactTarget.

43. Salesforce renamed ExactTarget as Salesforce Marketing Cloud after Salesforce acquired ExactTarget.

44. Salesforce Marketing Cloud provides digital marketing automation and analytics software and services for email, mobile, social and online marketing.

45. Among other things, Salesforce Marketing Cloud offers companies like Lowe's the service and product of embedding marketing emails with nearly invisible pixels, not transparent to the naked eye, which track the consumer and their activities on their own personal computer or mobile device.

46. The Salesforce Marketing Cloud's tracking feature uses a 1x1 pixel to track information.

47. As part of the tracking, the pixel obtains and collects details about the consumer at home or on their mobile device, such as the consumer's location, the time a message was opened, the time links were clicked, and whether an email was shared with a family member or acquaintance and whether the device is a computer or mobile device.

48. This tracking pixel enables Defendants to track, inter alia, "engagement data" for every email recipient on an individual level.

49. Defendant Lowe's utilized the hidden embedded tracking system provided by Salesforce to collect, obtain and track, among other things, time logs of their email access, whether they opened, printed or forwarder the email, the location of the resident and device used when opening or reading the email, the time they spent reading the email, the amount of times they opened the email, the IP address of the resident, the associated emails addresses of the resident, and their email client type and email path data used to, *inter alia*, link a physical address associated with an Arizona resident's IP address.

50. Salesforce's hidden embedded email tracking pixels are used by Lowe's and monitor Plaintiff and other Arizona residents' behavior.

51. When Lowe's uses and embeds Salesforce's tracking pixels in emails sent to Plaintiff and the Class Members, the records and information obtained though the tracking pixel is sent to a private cloud database managed, operated and/or controlled in whole or in part by Salesforce where Lowe's may and does access and/or export the collected and procured records and information.

52. Salesforce and its hidden tracking pickle extracted from Plaintiff and other Arizona residents the records and information set forth in Paragraph 3 *supra* and collects and stores it on servers and/or databases managed, operated, controlled and/or owned in whole or in part by Salesforce.

53. Lowe's can and does export from the servers and/or databases managed, operated, controlled and/or owned in whole or in part by Salesforce the records and information set forth in Paragraph 3 *supra*. Lowe's can and does export the records and information set forth in Paragraph 3 *supra* to its own servers including its own File Transfer Protocol servers.

54. As set forth herein, Lowe's procures, collects and shares the records and information described in paragraph 3 *supra* with unauthorized third parties, such as Salesforce.

55. As set forth herein, Salesforce procures, collects and shares the records and information described in paragraph 3 *supra* with unauthorized third parties, such as Lowe's.

56. Salesforce obtains, stores and uses the collected data and communication service records to paint a uniquely identifiable detailed picture of Plaintiff and other Arizona residents' interests to create targeted advertising campaigns for Lowe's.

57. The Salesforce database contains the collected and obtained information which is then used to generate data for leads, tasks, opportunities and accounts.

58. Salesforce can and does link the collected information about the consumer with additional data about the consumer that Salesforce possesses and/or purchases from third parties including third party data brokers.

59. Salesforce maintains the collected data and information and makes it available to Lowe's for export or download.

60. Lowe's obtains, stores and uses the collected data and communication service records to paint a uniquely identifiable detailed picture of Plaintiff and other Arizona residents' interests to create targeted advertising campaigns for Lowe's.

61. Defendants' tracking pixel can be seen in a snippet of the HTML code in one of Defendant Lowe's emails:

```
<img width=3D"1" height=3D"1" src=3D"https://pixel.inbox.exacttarget.com/pi=
xel.gif?r=3D3cee957cf4045be5bdd97f3d45b56bc1d2d850ec">
<img width=3D"1" height=3D"1" alt=3D"" src=3D"https://click.e.lowes.com/ope=
n.aspx?ffcb10-fed0107075640278-fe4f1175716d077a7d13-fe9515707364027471-ff9d=
1670-fe5f1671706d007f7c14-fefc1077746403&amp;d=3D40139&amp;bmt=3D0">
```

62. Plaintiff was unaware that tracking pixels were embedded in the emails sent to her by Defendants.

63. Plaintiff was unaware that Defendants were collecting and using the records and information described herein.

64. Defendant Lowe's never received authorization from Plaintiff to use tracking pixels in emails it sent to her.

65. Defendant Lowe's never received authorization from Plaintiff to procure, collect and use the records and information described herein.

66. Defendant Salesforce never received authorization from Plaintiff to use hidden tracking pixels in emails sent to her.

67. Defendant Salesforce never received authorization from Plaintiff to procure, collect and use the records and information described herein.

68. Defendant Lowe's never received authorization from Class Members to use tracking pixels in emails it sent to them.

69. Defendant Lowe's never received authorization from Class Members to procure, collect and use the records and information described herein.

70. Defendant Salesforce never received authorization from Class Members to use hidden tracking pixels in emails sent to her.

71. Defendant Salesforce never received authorization from Class Members to procure, collect and use the records and information described herein.

72. Plaintiff and the recipients may be aware that they receive marketing emails, but they are not aware of, nor do they consent to, Defendants' surreptitious means of tracking their behavior and location.

**Arizona's Telephone, Utility and Communication Service Records Act
A.R.S. § 44-1376**

73. A.R.S. § 44-1376 *et seq.* prohibits procurement of any "communication service record" (including email records) of "any resident of this state without the authorization of the customer to whom the record pertains, or by fraudulent, deceptive, or false means." A.R.S. § 44-1376.01.

74. A.R.S. § 44-1376 (1) defines "communication service record" as follows: "'Communication service record' includes subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record."

75. A.R.S. 44-1376.04(A)(2) allows Arizona residents to pursue civil causes of action and civil remedies. Ariz. Rev. Stat. Ann. § 44-1376.04(A)(2).

76. A.R.S. 44-1376.04(A)(2) states that "[i]n a civil action, a customer whose communication service records were procured, sold or received in violation of this article may recover from the person that committed the violation the following relief…2. Damages equal to the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation but in no case shall a person entitled to recover received less than one thousand dollars."

### Class Action Allegations

77. Plaintiff seeks to represent a class (the "Class" or "Class Members") defined as: All persons in the State of Arizona who have opened a marketing email containing a tracking pixel from Defendants during the two years preceding the filing of this Complaint.

78. Excluded from the Class are Defendants, its subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which it has a controlling interest, and the Judge to whom this case is assigned and any member of his or her immediate family.

79. Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the tens of thousands and possibly more. The precise number of Class Members and their identities are unknown to Plaintiff at this time but will be determined through discovery.

80. Class Members may be notified of the pendency of this action by email, mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

81. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    a) whether Defendants "[k]nowingly procure[d], attempt[ed] to procure, solicit[ed] or conspire[d] with another to procure a … communication service

record of any resident of this state without the authorization of the customer to whom the record pertains";

b) whether Defendants "[k]nowingly procure[d], attempt[ed] to procure, solicit[ed] or conspire[d] with another to procure a … communication service record of any resident of this state…by fraudulent, deceptive or false means";

c) whether Plaintiff's and the Class's "communication service records" were procured, sold or received in violation of A.R.S. § 44-1376 *et seq*.

d) whether Defendants' conduct violates A.R.S. § 44-1376 *et seq*. or any other applicable laws; and

e) whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

82. Plaintiff's claims are typical of the claims of Class Members because Plaintiff, like all Class Members, had her communication service records procured, sold, or received by Defendants.

83. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

84. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.

85. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.

86. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

87. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

88. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

89. Defendants embed spy pixels in their marketing emails sent to Plaintiff and Class Members.

90. Defendants use the spy pixels to extract "communication service records" related to Plaintiff, the Class and the delivery of the email the spy pixel is embedded in. This includes, but is not limited to, time logs of email access, associated email addresses, email client type, IP addresses, email path data used to, inter alia, identify and reveal the physical address associated with an Arizona resident's IP address, and device information.

## Count I

### Violation of A.R.S. § 44-1376.01

91. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

92. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

93. Defendants "procure" and obtain Plaintiff's and Class Members' "communication service records" because they "obtain by any means, including electronically" Plaintiff's and Class member's "communication service records" as defined in A.R.S. § 44-1376.

94. In contravention of A.R.S. § 44-1376.01, Defendants knowingly procure and obtain "subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as … electronic mail …," which constitute "communication service records" under A.R.S. § 44-1376, from Plaintiff and Class Members.

95. Defendants never informed Plaintiff and Class Members that Defendants would be procuring, obtaining, storing and using sensitive information including, but not limited to, time logs of email access, associated email addresses, email client type, location information, email path data, IP addresses, and device information.

96. Plaintiff and Class Members never gave lawful consent to Defendants to procure the communication service records.

97. Defendants never received the Plaintiff's and Class Members' consent before Defendants procured, collected, obtained, stored, shared and used their communication service records and the records and information including those set forth in paragraph 3 *supra*.

98. As set forth herein, Defendants used deceptive means to procure, collect, obtain, store, share and use Plaintiff's and Class Members' communication service records and the records and information including those set forth in paragraph 3 *supra*.

99. Each time Defendants sent an email containing a spy pixel to Plaintiff and Class Members, Defendants procured a communication service record, thus committing a separate violation of A.R.S. § 44-1376.01.

100. Defendants invaded Plaintiff's and Class Members' right to privacy by spying on them when they opened and read an email. That conduct also intruded upon their seclusion.

101. Accordingly, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth by the statute, including actual damages, profits made by Defendants as a result of the violation, $1,000 for each violation, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other equitable relief as the court determines to be appropriate.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgement against Defendants, as follows:

   a. For an order certifying the Class under Ariz. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class Members;

   b. For an order declaring that Defendants' conduct, as set out above, violates A.R.S. § 44-1376.01;

   c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

   d. For actual damages or damages of $1,000.00 for each of Defendants' violations, whichever is more, pursuant to A.R.S. § 44-1376.04;

   e. For damages equal to the sum of any profits Defendants made for each of Defendants' violations, pursuant to A.R.S. § 44-1376.04;

   f. For injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Defendants to comply with A.R.S. § 44-1376 *et seq*.

   g. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit;

      h. For pre- and post-judgment interest on all amounts awarded, to the extent allowable; and

      i. For such other and further relief as the Court may deem proper.

## Jury Demand

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: February 18, 2025              Respectfully submitted,

                                                  Yvonne Carbajal, individually and on behalf of a class of persons similarly situated.

                                                  <u>/s/ James X. Bormes</u>

| | |
|---|---|
| James X. Bormes | LOCAL COUNSEL: |
| (*pro hac vice*) | Michelle R. Matheson #019568 |
| Illinois State Bar No. 620268 | MATHESON & MATHESON, P.L.C. |
| Catherine P. Sons | 15300 North 90th Street, Suite 550 |
| (*pro hac vice*) | Scottsdale, Arizona 85260 |
| Illinois State Bar No. 6202568 | (480) 889-8951 |
| LAW OFFICE OF JAMES X. BORMES, P.C. | mmatheson@mathesonlegal.com |
| Illinois State Bar No. 620268 | |
| 8 South Michigan Avenue, Suite 2600 | |
| Chicago, Illinois 60603 | |
| (312) 201-0575 | |
| jxbormes@bormeslaw.com | |
| cpsons@bormeslaw.com | |

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan
(*pro hac vice*)
Illinois State Bar No. 6273422
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com