David B. Rosenbaum, 009819
Colin M. Proksel, 034133
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
drosenbaum@omlaw.com
cproksel@omlaw.com

Teresa Michaud, *pro hac vice*
Ariana E. Bustos, *pro hac vice*
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, California 90071-1560
(213) 561-3250
tmichaud@cooley.com
abustos@cooley.com

Tiana Demas, *pro hac vice*
COOLEY LLP
110 North Wacker Drive, Suite 4200
Chicago, Illinois 60606-1511
(312) 881-6500
tdemas@cooley.com

Reece Trevor, *pro hac vice*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
(415) 693-2247
rtrevor@cooley.com

*Attorneys for Defendant Lowe's Home Centers, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne Carbajal, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Lowe's Home Centers, LLC, a North Carolina Limited Liability Company, and Salesforce, Inc., a Delaware Corporation,<br><br>Defendants. | Case No. 2:25-cv-00041-DJH<br><br>**MOTION TO DISMISS CLASS ACTION COMPLAINT BY LOWE'S HOME CENTERS, LLC**<br><br>**(Oral Argument Requested)** |

Defendant Lowe's Home Centers, LLC ("Lowe's") moves to dismiss Plaintiff Yvonne Carbajal's First Amended Class Action Complaint (the "Complaint," ECF No. 10) with prejudice for failure to state a claim under Rule 12(b)(6).[1]

## I.   INTRODUCTION

This is one of over a dozen nearly identical lawsuits filed across Arizona and a handful of other states seeking to exploit a narrow Arizona statute applying to telephone service records. These lawsuits attempt to stretch the Arizona Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 ("TUCSRA"), beyond text and reason to penalize companies for simply learning whether their customers open routine email communications that the customers signed up to receive. Every court to have reached the issue agrees: the statute was designed to protect only service records created and held by phone companies, public utilities, and similar providers of communication services.

Plaintiff alleges that Lowe's and co-defendant Salesforce, Inc. ("Salesforce") use software code in the emails to determine whether and how she interacted with email messages she asked Lowe's to send her (*e.g.*, whether she opened the email or clicked on links within the email). Plaintiff invokes TUCSRA, a law passed in the mid-2000s to protect the confidentiality of telephone calls and related utility records, not to regulate the types of communications at issue here.

Plaintiff's attempt to rewrite and transform this narrow state statute into a broad, catchall privacy law fails as a matter of law. As court after court has confirmed, TUCSRA's plain text, bolstered by analogous statutes and legislative history, makes clear that it protects none of the information at issue in the Complaint. And Plaintiff has not plausibly alleged other essential elements of a TUCSRA claim, including that Lowe's "knowingly" acted "without [her] authorization" or that she is a "customer" within the meaning of the statute. As Judge Campbell put it in dismissing Plaintiff's nearly identical complaint against Home Depot with prejudice, "[t]he conduct at issue—sending marketing emails and collecting

---

[1] Plaintiff amended her pleadings to substitute Lowe's Home Centers, LLC for Lowe's Companies, Inc., which she named in her original complaint. *See* ECF No. 11-1.

information through tracking pixels—simply is not covered by the TUCSRA." *Carbajal v. Home Depot U.S.A., Inc.*, 2024 WL 5118416, at *5 (D. Ariz. Dec. 16, 2024); *see also Camp v. Sephora USA Inc.*, No. 24-cv-07330-TLT, ECF No. 22 (N.D. Cal. Jan. 24, 2025) (dismissing with prejudice); *Smith v. Target Corp.*, No. CV 2024-025462 (Ariz. Super. Ct., Maricopa Cnty. Jan. 10, 2025) (same); *Mills v. Saks.com LLC*, 2025 WL 34828 (S.D.N.Y. Jan. 6, 2025) (same); *D'Hedouville v. H&M Fashion USA, Inc.*, No. C20243386 (Ariz. Super. Ct., Pima Cnty. Oct. 11, 2024) (same); *Hartley v. Urban Outfitters, Inc.*, No. 240800388 (Pa. Ct. Comm. Pl. Oct. 2, 2024) (same).[2]

Consistent with this fast-growing line of clear authority, this Court should find TUCSRA inapplicable to Plaintiff's allegations as a matter of law and dismiss the Complaint with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff alleges that Lowe's utilized Salesforce's "hidden tracking" software that she calls "spy pixels" in marketing emails sent to Plaintiff. Compl. ¶¶ 1, 3, 34. Plaintiff claims the alleged pixels "obtain, collect, record, share and store" various metadata about the emails that Lowe's customers receive, such as whether and when "the email recipients opened and read emails from Lowe's, where they opened it, how long they looked at it, and whether they forwarded it." *Id*. ¶ 11.

The Complaint says little about what this pixel technology is or how it works. Plaintiff alleges that within the past "two years" she has received and opened emails from Lowe's, and "most recently" opened one of the at-issue emails in March 2024. *Id*. ¶¶ 14, 15. "Each time" she opened an email from Lowe's, Plaintiff claims, the "pixel procured records and information from her and her computer and/or mobile phone, through the email tracking software embedded in the emails, including information and records that identified her, disclosed her location, and tracked where and when she opened, read and/or forwarded the emails." *Id*. ¶ 16. Without providing any details, she also asserts that Defendants used

---

[2] For the Court's convenience, copies of these orders that do not appear in commercial legal databases are appended to the concurrently filed Declaration of Teresa Michaud as Exhibits A-D.

this information "to paint a uniquely identifiable detailed picture of Plaintiff and other Arizona residents' interests" and that Salesforce further used it "to generate data for leads, tasks, opportunities and accounts." *Id.* ¶¶ 56-57, 60. Notably, Plaintiff nowhere alleges that Lowe's ever sent her these emails without her consent, likely because she signed up for Lowe's marketing emails voluntarily and so could not make such an allegation consistent with Federal Rule of Civil Procedure 11. In other words, the only information that the pixels allegedly create is read-receipt data about the way users interact with Lowe's promotional emails that they chose to receive.

Under this amalgam of vague allegations, Plaintiff claims that Lowe's violated A.R.S. § 44-1376.01, a provision of TUCSRA. However, TUCSRA is not a general-purpose privacy protection or anti-eavesdropping statute. Instead, the Arizona Legislature enacted TUCSRA in 2006 to protect a narrow set of consumer utility service records against a specific threat: individuals who impersonated consumers to extract information about them from their utility records. The Legislature was concerned that "over 40 'data broker' companies" had "fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting.'" Ariz. State Sen., 47th Leg., 2d Reg. Sess., Am. Fact Sheet for H.B. 2785 (Apr. 24, 2006).[3] This original version of the statute, however, protected only telephone records. The next year, the Legislature added similar prohibitions on "pretexting" for "communication service records" and "public utility records," specifically noting that the addition "expands the existing crime of falsely procuring, selling or receiving *telephone records*" to include these two new categories of records. Ariz. H.B. Summ., 2007 Reg. Sess., H.B. 2726 (Apr. 30, 2007).[4] As the Senate sponsor put it, his bill was designed to address the concern that pretexters could "pretend that they're someone else and get your personal information ***from a utility***." *H.B. 2726: Hearing Before the Sen. Comm. on Commerce & Econ. Dev.*, 48th Leg., 1st Reg. Sess.

---

[3] *Available at* https://tinyurl.com/397yxmxc.
[4] *Available at* https://tinyurl.com/jdfpvp64.

(Ariz. 2007) (statement of Sen. Farnsworth).[5] Against this backdrop, the Legislature passed TUCSRA, granting these utility-generated and -maintained records special statutory protection. For the next fifteen years, not a single court was ever called on to interpret the statute's definitions or civil liability provisions.[6]

That changed in late 2023, when plaintiffs around Arizona and the country began filing putative class actions challenging the practice of using pixels to determine whether a user has opened or interacted with a marketing email—something never discussed or contemplated during the legislative deliberations regarding TUCSRA. Plaintiff originally sued Lowe's and Salesforce in this Court in July of 2024, but—despite declining to amend or dismiss her complaint at the parties' LRCiv 12.1 conference—voluntarily dismissed after Defendants filed Rule 12(b) motions. *See* ECF No. 24, *Carbajal v. Lowe's Home Centers, LLC*, No. 2:24-cv-01030-DLR (D. Ariz. Sept. 26., 2024). She then refiled the instant complaint in Arizona state court, and Defendants removed to this Court under the Class Action Fairness Act. *See* ECF No. 1. In the meantime, courts around the country had begun ruling on the earlier waves of TUCSRA complaints, with every court to reach the merits finding that the complaints failed to state a claim under the statute.

### III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). Pleadings that only permit a court

---

[5] *available at* https://www.azleg.gov/videoplayer/?eventID=2007031276&startStreamAt=1663 at 38:23.

[6] "Until recently, the only cases addressing the statute arose in the criminal context" and involved the unrelated question whether trial courts erred in refusing to suppress evidence that the defendants-appellants claimed law enforcement had obtained in violation of TUCSRA. *Home Depot*, 2024 WL 5118416 (*State v. Zuck*, 2021 WL 2103598, at *4 (Ariz. Ct. App. May 25, 2021), *State v. Duran*, 2017 WL 6333916, at *3 (Ariz. Ct. App. Dec. 11, 2017)).

to infer "the mere possibility of misconduct" are subject to dismissal. *Id.* at 679. And a court will "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

When interpreting a state statute, a federal court must follow the state's rules of statutory interpretation, "looking to the decisions of the [state's] courts" and predicting how the state's highest court would rule if the question is one of first impression. *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 614 (9th Cir. 2017). The Arizona Supreme Court interprets "statutes to give effect to the legislature's intent." *State v. Allen*, 253 Ariz. 306, 337 ¶ 87 (2022) (citation omitted). When "statutory language is clear and unambiguous, and thus subject to only one reasonable meaning, we apply the language without using other means of statutory construction." *Id.* (cleaned up). If instead "the language is ambiguous, [the court] determine[s] meaning by considering other factors, such as its subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Id.* (cleaned up). In so doing, Arizona courts "seek to harmonize related statutory provisions and aim to achieve consistency among them in the context of the overall statutory scheme." *Robson Ranch Mountains, LLC v. Pinal Cnty.*, 203 Ariz. 120, 125 ¶ 13 (App. 2002) (cleaned up). In addition, when (as here) a penal statute is at issue, courts must "resolve all doubts in the defendant's favor" whenever there is ambiguity. *State v. Barnett*, 209 Ariz. 352, 355 ¶ 16 (App. 2004) (citing cases). This "essential" due-process protection ensures that defendants have "fair warning of the nature of the conduct proscribed[.]" *See Vo v. Super. Ct.*, 172 Ariz. 195, 200 (App. 1992) (discussing A.R.S. § 13-101).

### IV. ARGUMENT

The Complaint's sole theory of liability is that Lowe's "procure[d]" Plaintiff's "communication service records" without her permission in violation of § 44-1376.01(A). ¶ 72. TUCSRA defines a "communication service record" to include a narrowly specified list of enumerated "subscriber information":

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

> including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

A.R.S. § 44-1376(1). The statute specifically notes that "'[c]ommunication service records do not include the content of any stored oral, wire or electronic communication or a telephone record." *Id.* TUCSRA authorizes a civil right of action, but only for "a customer whose communication service records, telephone records or public utility records were procured, sold or received in violation" of the statute. A.R.S. § 44-1376.04(A).

Plaintiff therefore fails to state a claim unless she has plausibly alleged that the information she claims Lowe's collected via its emails 1) is contained in a "communication service record" and 2) falls into one of these enumerated categories. She must also plead that she is a "customer" for purposes of TUCSRA. The Complaint does not plausibly allege any of these elements, much less all of them, and any attempt to do so would be futile.

### A. Plaintiff cannot claim a statutory violation because she does not allege that Lowe's procured the records of a "communication service."

Even without considering each of the statutorily enumerated categories of "communication service records," the Complaint has a fundamental problem: "communication service records" are, on their face, only records created and held ***by a communication service***, like an internet service provider or a wireless data carrier. But Plaintiff does not allege that Defendants unlawfully procured any records created and held by any of her communication service providers. Rather, the Complaint charges that Defendants created their ***own*** records about her communications with them. *See, e.g.*, Compl. ¶ 3, ¶ 16. As Judge Campbell explained, TUCSRA's reference to "communication service record" "does not simply refer to the discrete categories of information listed in the definition (categories that could be said to have been captured by the tracking pixels), but instead refers to ***records communication service providers maintain about their***

*subscribers*." *Home Depot*, 2024 WL 5118416, at *4 (emphasis added). Plaintiff's theory would require the court to rewrite the statute, essentially reading the words "communication service" out of the term "communication service record." For at least four reasons, this is not a defensible construction of TUCSRA.

### 1. Arizona law treats "communication service records" as records held by communication services.

Arizona's broader statutory scheme indicates that TUCSRA's definition of "communication service record" only covers "businesses such as internet service providers that deliver actual communication services to subscribers, rather than retailers engaged in selling goods and services" like Lowe's "who communicate with customers by email." *Id.* at *3. The Arizona Legislature did not create TUCSRA's definition of "communication service records" out of whole cloth. Rather, it imported that term from the Arizona Eavesdropping and Communication Act ("ECA"), enacted seven years before TUCSRA. The ECA provides a procedure for criminal prosecutors to subpoena "communication service records" from "communication service providers." A.R.S. § 13-3018. That statute also defines a "communications service provider" as "any person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." *Id.* § 13-3001(3). Under the ECA, a prosecutor may obtain a communication service record by issuing "a subpoena duces tecum to a communication service provider," who may certify such records if they are "the regular communication service records that are used and kept by the communication service provider." *Id.* §§ 13-3018(B), (D)(1). Taken together, this all shows that the ECA envisioned "communication service records" to be records created and held by entities that *provide* communication services.

When the Legislature enacted TUCSRA, it incorporated the definition of "communication service record" from the ECA verbatim. *Id.* § 13-3018(G). Arizona courts do not "interpret the [L]egislature's use of the identical phrase in two statutes relating to the same general subject matter as having two entirely different meanings." *Maricopa Cnty. v.*

*Barkley*, 168 Ariz. 234, 238 (App. 1990). It cannot be that the Legislature adopted the ECA's definition of "communication service record" in full but intended it to have a different meaning in TUCSRA, since "[t]he statutes address related subjects and the TUCSRA uses specific language from the [ECA]." *Home Depot*, 2024 WL 5118416, at *3; *see also D'Hedouville*, slip op. at *3. ("This definition of communication service provider as stated in the Eavesdropping and Communications Act should be read in harmony with the definitions in TUSCRA [*sic*] because the statutes are of a related subject and define 'communication service record' with identical descriptions."); *Camp*, slip op. at 4-6 (agreeing with *Home Depot* and *D'Hedouville*); *Smith*, slip op. at 4 (same).

The Complaint does not and cannot allege that Defendants' pixels captured any record generated or held by a communication service provider. On the contrary, it asserts that the pixel itself "report[s] to the sender of the email" various categories of data once it is "activate[d]" by the recipient opening a message. Compl. ¶¶ 40-41. Because Plaintiff alleges only that Defendants create new records of their own about her messages, not that they wrongfully obtain records held by a communication service provider, she fails to allege the requisite capture of a "communication service record" protected by TUCSRA.

    **2.    The statutory categories of "subscriber information" included in "communication service records" confirms they are limited to records maintained by communication service providers.**

Even if one ignored the ECA's treatment of "communication service records," TUCSRA's text confirms that those records include only those kept by a communication service provider. Only "subscriber information" can comprise "communication service records," indicating that they pertain to records that communication services keep about their subscribers. A.R.S. § 44-1376(1).

Several of the statute's examples of "subscriber information" confirm this reading. For instance, "toll bills," records of a subscriber's "length of service," data about a subscriber's "payment method," and information about the "nature of the communication service provided" to a subscriber are all records that communications services—not retailers or other entities like Defendants—typically maintain. *Id.* It would be nonsensical for this

information to be in the definition of a "communication service record" if that term had Plaintiff's broad meaning that covers everything associated with a communication. *See D'Hedouville*, slip op. at 3 ("[T]he information at issue here is not 'subscriber information.'"); *see also Home Depot*, 2024 WL 5118416, at *4 n.6 ("[A]s further evidence that [TUCSRA] applies to the records of communication service providers, it specifically includes 'the nature of the **communication service provided**, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.").

### 3. Plaintiff's reading of TUCSRA would render other provisions of the statute nonsensical.

Parallel provisions of the statute confirm that "communication service" must modify "records" in a way that limits the definition by the entity that holds the records. Consider Section 44-1376(4), which defines a "public utility record" to include much of the same information as a "communication service record": "name, billing or installation address, length of service," and "payment method." *Id.* It stands to reason that a "public utility record" must therefore be a record held by a public utility, just as a "communication service record" must be a record held by a communication service.

To hold otherwise would render the "public utility" and "communication service" language in each definition superfluous, since they otherwise cover much of the same information. The Arizona Legislature could have simply said "record," but it did not. When this Court interprets Arizona statutes, it strives to "give effect . . . to each word as appropriate" and ensure "that no provision is rendered meaningless, insignificant, or void." *Plaza v. Chase Home Fins. LLC*, 2011 WL 13233550, at *4 (D. Ariz. July 27, 2011) (quoting *Mejak v. Granville*, 212 Ariz. 555, 557 (2006)). Moreover, the Legislature adopted the definitions of "public utility records" and "communication service records" at the same time, making it even less likely that the Legislature intended these two different terms to have the same meaning. 2007 Ariz. Legis. Serv. Ch. 210 (H.B. 2726).

Likewise, TUCSRA imposes certain obligations on "[e]ntities that maintain communication service records, telephone records or public utility records" and contains several provisions applicable to "a public utility, a telephone company or an entity that maintains communication service records[.]" A.R.S. §§ 44-1376.01(B), 1376.02(B)–(E). This, too, indicates that the Legislature was concerned specifically with records maintained by each of these entities in the ordinary course of their business—not simply with information about ***all*** communications, nor records created by a party to a communication.

Indeed, a contrary reading would make a hash of the law. If "communication service records" did not have to be records maintained by communication services and "public utility records" did not have to be records maintained by public utilities, then ***anyone*** who obtained another person's name or other enumerated information from ***any*** source without consent would be liable for violating Section 44-1376(A). There is no reason to believe that the Arizona Legislature intended to hide the "elephant[]" of such sweeping criminal and civil liability in the "mousehole[]" of a statute written about specific sets of records. *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

### 4. TUCSRA's legislative history further undermines Plaintiff's textual reading of the statute.

Finally, if any ambiguity remained as to TUCSRA's plain meaning, "the pertinent legislative history confirms" that Plaintiff's reading cannot be correct. *State v. Cota*, 234 Ariz. 180, 185 ¶ 15 (App. 2014). The Legislature enacted TUCSRA in response to a particular narrow concern: that bad actors would impersonate consumers to extract personal information from communication service providers with which those consumers held accounts and who maintained records about the consumers. *See supra* at 3-4. The harm that TUCSRA was designed to address was always that an individual would fraudulently obtain information created and held by communication service providers—not separately stored metadata about communications themselves by the sender, as Plaintiff urges here. The statute's text mirrors this goal: it "consistently protects subscribers and customers from the

unauthorized procurement of their records maintained by telephone companies, public utilities, and communication service providers." *Home Depot*, 2024 WL 5118416, at *4.

### B. The statutorily defined categories of "communication service records" are facially inapplicable regardless.

Even if TUCSRA's scope were not limited to records created and held by communication service providers, Plaintiff would still fail to state a claim because she has not alleged that Lowe's collected any information listed in the statutory definition. Plaintiff invokes the full definition of "communication service record" in Section 44-1376(1), *see* Compl. ¶ 94, but nowhere specifies which of its enumerated categories she contends encompasses each piece of data Lowe's allegedly collected, leaving the Complaint's precise theory of liability murky. Most of the statutory categories are clearly inapplicable. The Complaint never alleges that Defendants collected anything resembling Plaintiff's "name,"[7] "billing or installation address," "length of service," "payment method," "telephone number," or "toll bills." A.R.S. § 44-1376(1). That leaves only three potentially applicable statutory categories: "access logs," "records of the path of an electronic communication between the point of origin and the point of delivery," and "the nature of the communication service provided." Plaintiff does not plausibly allege that Lowe's collected any information that falls into any of these categories.

#### 1. Plaintiff does not plausibly allege that Lowe's collected "access logs" without her permission.

Plaintiff may contend that Lowe's alleged documentation of "when she opened, read and/or forwarded the emails" Lowe's sent her constitutes an "access log" under TUCSRA, but this is meritless. Compl. ¶ 16. "[W]hen and how an email was opened, how long it was opened, what device was used, the associated IP address of the recipient, and whether it was forwarded – is not a . . . type of 'access log' protected by [the] TUCSRA." *Home Depot*, 2024 WL 5118416, at *5 (quoting *D'Hedouville*, slip op. at 5).

---

[7] To the extent the Complaint's passing allegation that the pixels "identified" Plaintiff is intended to mean that they determined Plaintiff's name, that allegation is conclusory and implausible. Compl. ¶ 16.

The statute's definition of "communication service record" is not concerned with the way a user interacts with a given communication, but her interaction with the "communication service" as a whole. Most of the other examples of "subscriber information," like "length of service," "installation address," and "payment method," indicate as much. A.R.S. § 44-1376(1). Indeed, when the Legislature wanted to protect information about specific communications, it knew how to do so: by referring explicitly to a given "electronic communication." *Id*. No such language is present in the passing reference to "access log[s]," so the more natural meaning is that it refers to logs of when a subscriber used an email *service* (or other communications service), not when they accessed an individual email or interacted with its content. For instance, while the statute might protect logs of when a user logged into and out of her Gmail or Outlook account, there is no basis to conclude that it protects logs of interactions with specific messages, as Plaintiff would have the Court conclude.

    **2.    Plaintiff does not plausibly allege that Lowe's collected "records of the path of an electronic communication between the point of origin and the point of delivery" without her permission.**

None of Plaintiff's allegations go to the collection of records about how an electronic communication transited "between the point of origin and the point of delivery[.]" A.R.S. § 44-1376(1). On the contrary, Plaintiff claims that everything Lowe's collected was "the result of ***opening*** the email[.]" Compl. ¶ 40 (emphasis added). But an email cannot be opened before it is delivered. Accordingly, everything that Plaintiff alleges Lowe's was able to obtain, from "identity details of the computer or smartphone" to "when an email is read," necessarily reflects what happened after Plaintiff purportedly received the emails—to use the statutory language, after "the point of delivery." It therefore falls outside the scope of this category and cannot support liability as a matter of law. Myriad courts interpreting privacy statutes with similar temporal requirements have reached equivalent conclusions. *See, e.g.*, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002) (information stored on website was not in transit, so could not be "intercepted" for purposes of federal Wiretap Act); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077-78 (N.D. Cal.

2015) (collecting Ninth Circuit cases involving emails where "the challenged acquisition occurred *after the transmission was completed*" and so no interception could have occurred under the Wiretap Act) (emphasis added); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (conclusory allegation that defendant collected information "in real time" did not satisfy California Invasion of Privacy Act's requirement that communications be intercepted while "in transit"), *aff'd,* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024).

While the Complaint asserts in conclusory terms that Lowe's was also able to obtain "email path data," Compl. ¶ 90, it does not even explain what "email path data" might be, much less any other supporting facts that would render this claim plausible. Rather, this allegation appears to be no more than a barely rephrased "[t]hreadbare recital[] of the elements of" a Section 44-1376.01 violation, "supported by mere conclusory statements," and so is not entitled to any credence on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

>    **3.   Plaintiff does not plausibly allege that Lowe's collected information about "the nature of the communication service provided" without her permission.**

Plaintiff cannot shoehorn her claims into the final statutory category, "the nature of the communication service provided." A.R.S. § 44-1376(1). The various examples that the Legislature provided of information in this category further define it: "caller identification, automatic number identification, voice mail, electronic mail, paging or other service features." *Id.*; *see also Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 199 (1995) ("[W]here general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or class of those enumerated." (citation omitted)). All of these are examples of services that a consumer might obtain from their telecommunications provider, confirming that such features are the only items encompassed within "the nature of the communication service provided." A.R.S. § 44-1376(1). Nothing that could fall into that category is at issue in the Complaint.

### C. Plaintiff has not pled facts showing that Lowe's knowingly acted without authorization.

Plaintiff has not (and cannot) plead facts showing that Lowe's "[k]nowingly" collected her information "without . . . authorization." A.R.S. § 44-1376.01(A)(1). The Complaint repeatedly asserts vaguely that Lowe's and Salesforce "never received authorization from Plaintiff to procure, collect and use" data generated by email pixels. Compl. ¶¶ 65, 66. But Plaintiff never pleads factual content to support that allegation. Under Arizona law, "knowingly" means "with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b). Plaintiff does not plead circumstances from which the Court might reasonably infer that Lowe's possessed any particularized awareness or belief that Plaintiff had not authorized it to use pixels in its emails to her.

### D. Plaintiff has not pled facts showing she is a "customer" of a communication service provider.

TUCSRA's civil cause of action extends only to "a customer whose communication service records . . . were procured, sold or received in violation of this article[.]" A.R.S. § 44-1376.04(A). Courts interpreting this provision read it to "contemplate[] a customer, or subscriber, *of a communication service*." *D'Hedouville*, slip op. at 4 (emphasis added). But Plaintiff never pleads that she is a "customer" of a communication service provider, and so she lacks statutory standing under TUCSRA. *See id.*; *Camp*, slip op. at 7 (dismissing with prejudice and rejecting argument that "receiving emails necessarily means that [plaintiff] is a customer of a communication service (e.g. Gmail or Yahoo)" (cleaned up)).

### V. CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss Plaintiff's Complaint with prejudice.[8]

---

[8] Lowe's reserves the right to compel Plaintiff's claims to binding arbitration pursuant to her agreement to Lowe's Terms of Use, which contain an arbitration clause, as well as to enforce its arbitration rights as to any putative absent class members in this action.

RESPECTFULLY SUBMITTED this 4th day of March, 2025.

OSBORN MALEDON, P.A.


By  s/ David B. Rosenbaum
   David B. Rosenbaum
   Colin M. Proksel
   2929 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012

COOLEY LLP
   Teresa Michaud, *pro hac vice*
   Ariana E. Bustos, *pro hac vice*
   355 South Grand Avenue, Suite 900
   Los Angeles, California 90071-1560

   Tiana Demas, *pro hac vice*
   110 North Wacker Drive, Suite 4200
   Chicago, Illinois 60606-1511

   Reece Trevor, *pro hac vice*
   3 Embarcadero Center, 20th Floor
   San Francisco, California 94111-4004

*Attorneys for Defendant Lowe's Home Centers, LLC*