Gregory J. Marshall (#019886)
Emily R. Parker (#036286)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
gmarshall@swlaw.com
eparker@swlaw.com

*Attorneys for Defendant Salesforce, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Ivonne Carbajal, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware corporation,

Defendants.

No. 2:25-cv-00041-DJH

**SALESFORCE, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Defendant Salesforce, Inc. ("Salesforce") moves to dismiss the First Amended Class Action Complaint in accordance with Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## I. INTRODUCTION

This lawsuit is one of a recent spate in which plaintiffs are attempting to twist a near 20-year-old Arizona statute designed to prevent a particular abusive practice involving utility records into an expansive and nonsensical privacy right. Plaintiff Ivonne Carbajal ("Plaintiff") – who has filed at least three such lawsuits – alleges in the Complaint that Defendant Lowe's Home Centers, LLC ("Lowe's") obtained without her consent certain information from tracking pixels embedded in Lowe's emails – emails that Plaintiff signed-up to receive – in violation of Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376, *et seq*. ("TUCSRA"), and that Salesforce provided the tracking pixel functionality to Lowe's through an on-line, subscription-based software platform through which Lowe's creates and sends its own emails, including deciding whether to incorporate tracking pixels in its emails. The Court should dismiss Salesforce for two reasons. First, the Court lacks personal jurisdiction over Salesforce, as Salesforce did not direct any conduct to Arizona from which Plaintiff's claim arises, and Salesforce is otherwise not "at home" in Arizona. Second, Salesforce is not a "communication service provider," and the information allegedly collected by the tracking pixels is not a "communication service record," within the meaning of the TUCSRA, as every court that has considered this issue has concluded.[1] Accordingly, no violation of that statute is stated.

## MEMORANDUM OF POINTS AND AUTHORITIES

## II. RELEVANT BACKGROUND

Salesforce is a software company that provides cloud-based customer relationship management ("CRM") software, and applications focused on sales, customer service,

[1] *D'Hedouville v. H&M Fashion USA, Inc*., No. C20243386 (Ariz. Super. Ct. Oct. 11, 2024); *Carbajal v. Home Depot U.S.A., Inc*., No. CV-24-00730, 2024 U.S. Dist. LEXIS 226740 (D. Ariz. Dec. 16, 2024); *Mills v. Saks.com LLC*, No. 1:23-cv-10638 (S.D.N.Y. Jan 6, 2025); *Smith v. Target Corporation, et al*., No. CV 2024-025462 (Ariz. Super. Ct. Jan. 10, 2025); and *Camp v. Sephora USA Inc*., No. 24-cv-07330-TLT (N.D. Cal. Jan. 24, 2025).

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

marketing automation, e-commerce, analytics, and application development. *See* Dawn Ratcliff Declaration ("Ratcliff Decl.") Ex. A at ¶ 3.[2] Salesforce offers subscriptions to a CRM software package called Salesforce Marketing Cloud. Compl. ¶¶ 42-44; Ratcliff Decl. at ¶ 6. Lowe's subscribes to Marketing Cloud pursuant to the terms of a Master Subscription Agreement (the "MSA"). Compl. ¶ 26; Ratcliff Decl. at ¶ 7.

Subscribers like Lowe's access Marketing Cloud through an online portal, through which subscribers build and send their own emails. Ratcliff Decl. at ¶ 9. While Salesforce offers subscribers services such as customer support, Salesforce does not control email content or email recipients, nor does Salesforce send any emails on behalf of its subscribers. *Id.* at ¶ 11. Thus, Salesforce did not send any emails on behalf of Lowe's to recipients in Arizona or elsewhere. *Id.* at ¶ 5.

Marketing Cloud offers a tracking function, which allows subscribers like Lowe's to insert a tracking pixel (also known as an "open pixel") into the emails subscribers create and send. *Id.* at ¶ 12. Subscribers like Lowe's may also integrate third-party products into Marketing Cloud, including tracking cookies or other tracking technologies offered by third parties. *Id.* at ¶ 14. Salesforce advises subscribers that they are solely responsible for, among other things, providing notice and/or obtaining consent for use of tracking technologies. *Id.* at ¶ 16.

Lowe's uses Marketing Cloud to build its own emails, upload its own recipient lists, and initiate its own emails from the online portal. *Id.* at ¶ 10. Lowe's decides whether to use tracking pixel technology in the emails it creates and sends. *Id.* at ¶ 13. Salesforce functions as merely the "send engine" for the emails. *Id.* at ¶ 20. Under the MSA, "[Lowe's] will...(d) use Services...only in accordance with...applicable laws and government regulations." *Id.* at ¶ 15.

When subscribers use tracking pixels, any data obtained through the tracking pixel is sent to a private cloud database, where the subscriber may access or export that data.

---

[2] When reviewing a motion to dismiss for lack of personal jurisdiction, the court "may consider extrinsic evidence—that is, materials outside the pleadings, including affidavits submitted by the parties." *SinglePoint Direct Solar LLC v. Curiel*, 2022 WL 331157, at *3 (D. Ariz. Feb. 3, 2022).

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

*Id.* at ¶ 18. Salesforce does not use tracking extracts (*i.e.*, data obtained through tracking technologies, including tracking pixels), except to provide services to its subscribers.[3] *Id.* at ¶ 23. Lowe's can export its tracking extracts (*i.e.*, sends, clicks, opens, bounces, unsubscribes, and spam complaints) to its own File Transfer Protocol (FTP) servers, as Lowe's chooses. *Id.* at ¶ 19.

In the Complaint, Plaintiff alleges that Lowe's used Marketing Cloud to email Plaintiff and other Arizona residents who subscribed to Lowe's email list, and that the emails utilized tracking pixels to collect certain information without Plaintiff's consent. Compl. at ¶¶ 1, 49. Plaintiff alleges that Salesforce "provided" the tracking pixels to Lowe's. *See id.* at ¶ 49.

## III. THE COMPLAINT PROVIDES NO BASIS FOR PERSONAL JURISDICTION OVER SALESFORCE

### A. Legal Standards for Personal Jurisdiction.

The requirement for personal jurisdiction over an out-of-state defendant stems from the Due Process Clause, which "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For that reason, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantive justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[4] Personal jurisdiction must exist in one of two variants: general or specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011); *see also Bristol-Meyers Squibb*

---

[3] Under the terms of the MSA, Lowe's emails and recipient lists are treated as "Customer Data," which Salesforce is prohibited from accessing except to provide services to Lowe's, as compelled by law enforcement, or as expressly permitted in writing by Lowe's. *Id.* at ¶ 23.

[4] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). Arizona law permits its Courts to exercise personal jurisdiction "to the maximum extent permitted by … the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also Wal-Mart Stores, Inc. v. LeMaire,* 242 Ariz. 357 (App. 2017) (applying Supreme Court precedent to hold that Wal-Mart was not subject to personal jurisdiction in Arizona).

*Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) ("[O]ur decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction.").

***1. Plaintiff has the burden of establishing personal jurisdiction.***

"When a defendant moves to dismiss for lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.'" *Morrill*, 873 F.3d at 1141 (quoting *Schwarzenegger*, 374 F.3d at 802); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (affirming grant of defendant's motion to dismiss for lack of personal jurisdiction). "The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977); *see also Alexander v. Circus Circus Enter., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) ("[T]his circuit has held that for purposes of personal jurisdiction, 'we may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" (quoting *Data Disc, Inv. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977))).

Instead, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)); *see also Schwarzenegger*, 374 F.3d at 800 ("[P]laintiff cannot 'simply rest on the bare allegations of [her] complaint.'" (quoting *Amba Mktg. Sys., Inc.*, 551 F.2d at 787)). Additionally, only those facts that occurred *before* a plaintiff's claims arose are relevant to the jurisdictional inquiry. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

***2. General Personal Jurisdiction.***

General (or "all purpose") personal jurisdiction permits a court to adjudicate an action against a corporate defendant only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017) (quoting *Daimler*

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

*AG v. Bauman,* 571 U.S. 117, 127 (2014)); *Daimler*, 571 U.S. at 138–39 (the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'").

Thus, establishing general personal jurisdiction over a non-resident defendant is an exacting standard, and is limited, with rare exceptions not applicable here, to only the "place of incorporation and principal place of business." *Id.* at 137; *id.* ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction'" and "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." (internal citations omitted) (alterations in original)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world.").

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

For this reason, the U.S. Supreme Court has expressly rejected the idea as "unacceptably grasping" that general personal jurisdiction can be exercised in every state where a corporation "engages in a substantial, continuous, and systematic course of business." *Daimler*, 571 U.S. at 137–38; *id.* at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them[;] [o]therwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

***3. Specific Personal Jurisdiction.***

***a. Supreme Court Precedent.***

The specific personal jurisdiction inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)); *see also Bristol-Myers Squibb Co.,* 582 U.S. at 262 (citing *Walden* for the proposition that the "primary focus" of the "personal jurisdiction inquiry is the defendant's relationship to the forum State").

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Specific personal jurisdiction is "case-linked," meaning that the lawsuit must arise out of or relate to the defendant's purposeful conduct in the state. *Bristol-Myers Squibb Co.,* 582 U.S. at 262; *Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

Significantly, the defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and "not the defendant's contacts with the persons who reside there." *Walden*, 571 U.S. at 284–85 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 ("Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 264; *see also Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, *the very controversy* that establishes jurisdiction." *Bristol-Myers Squibb Co.,* 582 U.S. at 262 (quoting Goodyear, 564 U.S. at 919) (emphasis added). A "defendant's general connections with the forum are not enough" because even "continuous activity" within a state does not "support the demand that [a] corporation be amendable to suits *unrelated* to that activity." *Id.* at 264 (emphasis added).

***b. Ninth Circuit Analysis.***

The Ninth Circuit, applying Supreme Court precedent, has established a three-part test for determining "whether a [non-resident] defendant has sufficient contacts to be subject to specific personal jurisdiction." *Morrill v. Scott Fin. Corp.,* 873 F.3d 1136, 1142

(9th Cir. 2017). First, "[t]he non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of [the forum's] laws." *Id.* Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, "the exercise of the jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.*

Under the Ninth Circuit's test, "[t]he plaintiff has the burden of proving the first two prongs." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802). Only if the plaintiff succeeds in satisfying *both* of the first two prongs does the burden shift to the defendant to "present a compelling case; that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802) (emphasis added).

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

**B. This Court Does Not Have General Jurisdiction Over Salesforce.**

Under *Daimler*, Salesforce is not "essentially at home" in Arizona—there is simply nothing connecting Salesforce (a Delaware Corporation with its principal place of business in California) (*see* Ratcliff Decl. at ¶ 2) to Arizona in a way that meets the "exacting standard" of general personal jurisdiction. *See* 571 U.S. at 137; *Schwarzenegger*, 374 F.3d at 801; *see also LeMaire*, 242 Ariz. at 358–59, 362–63, ¶¶ 1–2, 20–21 (holding that Arizona did not have general jurisdiction over Wal-Mart, a Delaware corporation with its principal place of business in Arkansas, notwithstanding the fact that Wal-Mart had 127 retail locations and four distribution centers in Arizona, employed 33,910 Arizonans (more Arizonans than the next two largest employers combined), spent $1.5 billion with suppliers in Arizona, collected $270.3 million in Arizona sales taxes, and paid $91.5 million in Arizona taxes).

The U.S. Supreme Court has rejected the argument that jurisdiction can be exercised in *every* state where a corporation "engages in a substantial, continuous, and

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

systematic course of business." *Id.* at 137–38, 139 n. 20; *LeMaire,* 242 Ariz. at 361, ¶ 15 (citing *Goodyear* for the proposition that the U.S. Supreme Court has "reasoned that placement of [a product] into the stream of commerce, some of which may end up in the forum, is not enough to confer general jurisdiction"); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) ("Marketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction."); *SiteTools, Inc. v. Bansk Grp. LLC*, 2023 WL 5505979, at *3 (C.D. Cal. July 14, 2023) (explaining that defendant's emails directed at the California-based plaintiff did "not equate to [the] 'continuous and systematic' contacts that would support general jurisdiction in California.").

Plaintiff acknowledges that Salesforce is not incorporated in Arizona and does not have its principal place of business in Arizona. *See* Compl. at ¶ 22; *see also* Ratcliff Decl. at ¶ 2. Moreover, Plaintiff has not alleged any facts supporting her conclusory statement that Arizona has jurisdiction over Salesforce because Salesforce "does business throughout Arizona." *Id.* at ¶ 25. Salesforce does not own any real estate in Arizona, has less than 0.5 percent of its workforce in Arizona (*see* Ratcliff Decl. at ¶ 4), and Plaintiff offers no evidence to suggest that Salesforce's business in Arizona is so "substantial and continuous" that Salesforce is "at home" in Arizona. *See Daimler*, 571 U.S. at 127. Plaintiff cannot establish that this Court has general personal jurisdiction over Salesforce.

**C. This Court Does Not Have Specific Jurisdiction Over Salesforce.**

A court may exercise specific jurisdiction over a non-resident defendant only if that defendant has ***sufficient, substantial contacts with the forum state*** and the lawsuit "arise[s] out of or relate[s] to the defendant's contacts with the *forum*." *See Bristol-Myers Squibb*, 582 U.S. at 256 (quoting *Daimler,* 571 U.S. at 127) (emphasis in original); *see also Walden*, 571 U.S. at 284–85. As discussed above, the Ninth Circuit determines whether specific jurisdiction exists under a three-pronged test. *See Morrill*, 873 F.3d at 1142. As shown below, Plaintiff cannot sustain her burden of proving either of the first

two prongs of that test, nor would this Court's exercise of personal jurisdiction over Salesforce be reasonable under the third prong.

### *1. Plaintiff Cannot Establish that Salesforce "Purposefully Directed" Any Activity to Arizona.*

Under the first prong of the specific jurisdiction test, Plaintiff must show that Salesforce "purposefully directed [its] activities toward Arizona, or purposefully availed [itself] of the privilege of conducting activities there." *Morrill*, 873 F.3d at 1142. The Ninth Circuit's "analysis under the 'purposeful availment or direction' prong of the specific jurisdiction test turns on the nature of the underlying claims." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). "Where, as here, a case sounds in tort, [the Ninth Circuit] employ[s] the purposeful direction test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). "Purposeful direction 'requires that the defendant … have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Morrill,* 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 803).

Notably, the "[u]nilateral activity of another party or third person" is insufficient to demonstrate purposeful direction and, therefore, cannot satisfy the first prong of the specific jurisdiction test. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023); *see also, e.g., Helicopteros*, 466 U.S. at 417 (explaining that the "unilateral activity of another party or third person is not an appropriate consideration when determining whether *a defendant* has sufficient contacts with a forum State to justify an assertion of jurisdiction") (emphasis added).

Here, Plaintiff cannot establish "purposeful direction" because she is unable to show that Salesforce committed an intentional act expressly aimed *at Arizona* that was likely to cause harm *in Arizona.* The only allegations that Plaintiff makes for the existence of jurisdiction over Salesforce are the generic (and unsupported) statements that Salesforce "does business throughout Arizona," "provides customer service relationship software to companies doing business in and throughout Arizona," and that *Lowe's* sent

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

an unspecified number of marketing emails to Plaintiff that contained tracking pixels that Salesforce "provided." Compl. at ¶¶ 25, 26, 49.

Plaintiff's conclusory assertions that Salesforce "does business" in Arizona and sells software to companies doing business in Arizona is not the specific, "case-linked" activity that gives rise to *specific* personal jurisdiction. *See Bristol-Myers Squibb*, 582 U.S. at 262. Plaintiff's allegation that Salesforce "provided" the tracking pixel to Lowe's does not establish Salesforce's purposeful direction of *any* injurious activity *at Arizona.* Salesforce does not control the content or recipients of emails that its subscribers, including Lowe's, sends. *See* Ratcliff Decl. at ¶¶ 5, 9. Thus, Salesforce does not control to whom Lowe's emails are sent, whether Lowe's emails contain tracking pixels, or whether and how Lowe's chooses to notify its email recipients that Lowe's uses tracking pixels. *Lowe's* makes *all* those decisions. *See id.* at ¶¶ 5, 9, 13. And Plaintiff cannot rely on the actions of *Lowe's* to establish specific personal jurisdiction over *Salesforce*. *See Yamashita*, 62 F.4th at 503; *Helicopteros*, 466 U.S. at 417.

Because Plaintiff has failed to establish that Salesforce purposefully directed *any* case linked activity *at Arizona*, Plaintiff has failed to carry her burden of establishing the first prong required to find specific personal jurisdiction.

***2. Plaintiff's Claims do not Arise Out of Or Relate to Any Forum-Related Activities of Salesforce.***

"In deciding whether [plaintiff's] claims arise out of [defendant's] local conduct, this circuit applies a but for test." *TP Racing LLLP v. My Way Holdings LLC*, 2018 WL 4679676, at *4 (D. Ariz. Sept. 28, 2018); *see also Yamashita*, 62 F.4th 496, 504 (9th Cir. 2023) (noting that "for an injury to arise out of a defendant's forum contacts required 'but for' causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action").

Here, Plaintiff is unable to demonstrate how her claims arise out of or relate to *any* of Salesforce's forum-related activities. The gravamen of Plaintiff's claim is that she received emails from Lowe's (after subscribing to receive such emails) that contained

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

tracking pixels, that Salesforce provided the tracking pixels that Lowe's used, and those tracking pixels obtained certain information without Plaintiff's consent. *See* Compl. at ¶¶ 1, 3, 49. Salesforce does not control the content of its subscribers' emails (including whether they contain tracking pixels) or to whom those emails are sent, much less where. *See* Ratcliff Decl. at ¶¶ 5,8,13. Thus, there is *no* forum-related activity of Salesforce for Plaintiff's claim to have arisen out of or relate to. Plaintiff has accordingly failed to carry her burden of establishing the second prong of the specific personal jurisdiction test.

#### ***3. The Exercise of Personal Jurisdiction Over Salesforce Would be Unreasonable.***

To determine the reasonableness of exercising specific personal jurisdiction over a non-resident defendant, the following seven factors must be considered: "(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1125 (9th Cir. 2002). Based on these factors, it would be unreasonable to exercise specific personal jurisdiction over Salesforce in this lawsuit.

As to these factors, Salesforce did not "interject" itself into the affairs of Arizona at all, much less purposefully. Salesforce offered subscribers like Lowe's access to an online portal through which Lowe's builds its own emails, uploads its own recipient lists, and initiates its own emails – not to send allegedly violative emails to Arizona residents. Moreover, Salesforce is headquartered in California with a minimal workforce in Arizona. *See* Ratcliff Decl. at ¶¶ 2, 4. Thus, Salesforce's evidence would come from outside Arizona. And Arizona is not the only state with an interest in adjudicating this lawsuit. Both Delaware and California have at least an equal interest in adjudicating this dispute to ensure its corporate citizens like Salesforce comply with the law.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Regarding the sixth factor, a "plaintiff's convenience is not of paramount importance." *Munderloh v. Biegler GmbH*, No. CV-21-08004-PCT-GMS, 2022 WL 901408, at * 6 (D. Ariz. Mar. 28, 2022) (internal quotation and citation omitted). Instead, "[t]his [importance of the chosen forum] factor weighs most strongly in favor of the plaintiff if the chosen forum presents the *only means of litigating a claim*, or if refusing to exercise jurisdiction would force the plaintiff to pursue the case in multiple locations." *Id.* (internal quotation and citation omitted) (emphasis added). And "[t]he plaintiff bears the burden of proving the unavailability of an alternative forum." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d, 1122, 1133-34 (9th Cir. 2003).

Accordingly, these factors collectively weigh against the reasonableness of the Court exercising specific personal jurisdiction over Salesforce.

## IV. PLAINTIFF HAS NOT ALLEGED AND CANNOT ALLEGE A VIABLE TUCSRA VIOLATION.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Dismissal under Rule 12(b)(6) is warranted where a complaint lacks "a cognizable legal theory" or "sufficient facts alleged" under a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).

### B. Plaintiff Has Not Alleged a TUCSRA Violation.

The Complaint asserts a single count for violation of the TUCSRA. *See* Compl. at ¶¶ 91-101. The TUCSRA makes it unlawful for a person to "[k]nowingly procure . . . a public utility record, a telephone record or communication service record of any resident of [Arizona] without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01(A)(1). Plaintiff alleges that each time she opened a marketing email from Lowe's, the tracking pixel violated the TUCSRA by impermissibly procuring a "communication service record" related to

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Plaintiff. *See* Compl. at ¶ 94. As discussed in greater detail below, Plaintiff's Complaint does not state a claim under the TUCSRA, because it does not allege that Salesforce procured records from Plaintiff's communication service provider.

**1. *The Information at Issue Is Not A "Communication Service Record" Under the TUCSRA.***

The TUCSRA provides that a person shall not "[k]nowingly procure, attempt to procure, solicit or conspire to procure" a "communication service record of any resident of [Arizona] without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01. A.R.S. § 44-1376(1) defines "communication service record" as including:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

The statute excludes from the definition "the content of any stored oral, wire or electronic communication or a telephone record." *Id.*

Plaintiff's claim fails because the information at issue is not covered by the TUCSRA, which on its face applies to the records of a "communication service." Lowe's is a home improvement retailer, not a communication service provider, and the Complaint does not plead that Salesforce (or Lowe's) procured records about her from a communication service. Rather, the subject of the Complaint is records relating to the email communications from Defendants (Lowe's) to Plaintiff.

The distinction between Defendants' (Lowe's) own records and the records of a communication service is manifest in the types of records included within the operative definition (*i.e.,* billing and installation address, length of service, payment method, etc.), which is the information the Arizona Legislature sought to protect third parties from

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

surreptitiously accessing. Despite Plaintiff's allegations to the contrary, "time logs of email access, associated email addresses, email client type, location information, email path data, IP addresses, and device information" (Compl. at ¶ 95) is not information included or contemplated within the definition of "communication service record." *See Ctr. for Biological Diversity v. Norton*, 240 F. Supp. 2d 1090, 1099 (D. Ariz. 2003) ("It is a canon of statutory construction that words should not be added to or read into a statute.").

#### *2. The Legislative History of the Statute Makes Clear That It Does Not Apply to Email Tracking.*

The TUCSCRA was enacted to address pretexting, which is the practice of pretending to be someone else to obtain that person's proprietary information, such as phone records. Pretexting is, of course, a particular kind of fraud. The Arizona legislature's specific concern was that "over 40 'data broker' companies" had "fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting.'" Ariz. Sen. B. Summ., 2006 Reg. Sess., H.B. 2785 (Apr. 24, 2006). In other words, the harm that the TUCSRA was meant to address was that an individual would fraudulently obtain information created and held by communication service providers. While the original statute protected only "telephone records," the Legislature subsequently included "communication service records" and "public utility records." Again, the concern was that pretexters could "pretend that they're someone else and get your personal information from a utility." H.B. 2726: Hearing Before the Sen. Comm. On Commerce & Econ. Dev., 48th Leg. 1st Reg. Sess. (Ariz. 2007) (statement of Sen. Farnsworth).

Consistent with that purpose, the TUCSRA makes it unlawful for a person to "[k]nowingly procure ... [a] communication service record" of any Arizona resident "without the authorization of the customer ...." The statute defines "communication service record" as including "subscriber information" like a person's "name, ... electronic

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

account identification and associated screen names ... or access logs," as well as "records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as ... electronic mail ... or other service features." A.R.S. § 44-1376(1). But Plaintiff now attempts to apply this law to a context in which it was never intended and to which its plain language does not apply. The TUCSRA was never about email tracking, nor could it be interpreted as such today. As discussed in below, Plaintiff's tortured attempts to connect pretexting to email tracking pixels is the proverbial fitting of a square peg into a round hole.

***3. Every Court That Has Considered This Question Has Held the TUCSRA Does Not Apply Here.***

This question has been decided time and again. Indeed, one of Plaintiff's other cases was dismissed on these same grounds two months ago. In *Carbajal v. Home Depot U.S.A., Inc.*, No. CV-24-00730, 2024 U.S. Dist. LEXIS 226740 (D. Ariz. Dec. 16, 2024), Plaintiff claimed that the defendant's tracking pixels collect "communication service records" in violation of the TUCSRA. *Id.* at *6. Specifically, Plaintiff alleged that the defendant procured her name, "electronic account identification" or "associated screen name," "access logs" of the time and place the email was opened, and whether the email was forwarded. *Id.* In dismissing the claim, Senior Judge David Campbell reasoned:

> [T]he overall statutory scheme and the [TUCSRA's] specific language make clear that "communication service record" does not simply refer to the discrete categories of information listed in the definition (categories that could be said to have been captured by the tracking pixels), but instead refers to records communication service providers maintain about their subscribers.
>
> The Arizona legislature could expand the TUCSRA to cover information gathered by marketing emails and pixel technology, but it has not done so. And prior to the recent class actions brought in federal courts, the TUCSRA had never been invoked in a civil case of this nature.
>
> . . .

> Plaintiff's complaint does not state a claim under the TUCSRA. It does not allege that Defendant procured records from Plaintiff's communication service provider. **The conduct at issue – sending marketing emails and collecting information through tracking pixels – simply is not covered by the TUCSRA.**

*Id.* at *4 (internal citations omitted) (emphasis added).

Senior Judge Campbell's reasoning is consistent with an Arizona state court case that predated his decision by two months, *D'Hedouville v. H&M Fashion USA, Inc.*, No. C20243386 (Ariz. Super. Ct. Oct. 11, 2024). The plaintiff in that case, like Plaintiff here, claimed that the defendant violated the TUCSRA by using tracking pixels in marketing emails to obtain an "access log." *Id.* at *1. In dismissing the claim, the Arizona Superior Court noted that the legislative history of the TUCSRA supported a narrower reading of the statute, as Salesforce argued above:

> [The] TUSCRA was first enacted in 2006 to respond to concerns that additional security was needed to prevent unauthorized disclosure of information that was held by telecommunications carriers, not direct email marketing. *See* H.B. 2785 Fact Sheet 47th Leg. 2d Reg. Sess. (Ariz. Apr. 24, 2006) ("Local, long distance and wireless telephone companies collect customer information, including the numbers called, the time of the calls and particular services used . . . The FCC is currently investigating numerous companies for allegedly illegally procuring phone records.") This initial focus on telephone records was expanded to include "communication service records" and "public utility records." It again showed a concern that confidential information regarding a subscriber to a communication service might be procured by fraudulent or deceptive means. The Arizona legislature has not amended the statute since 2007, and no Arizona court has interpreted "communication service record" to include the information gleaned from a tracking pixel.

*Id.* at *4. Accordingly, the state court rejected the plaintiff's "expansive interpretation of the statute," concluding that the information at issue – "when and how an email was opened, how long it was opened, what device was used, the associated IP address of the recipient, and whether it was forwarded – is not a 'communication service record' or a type of 'access log' protected by [the] TUSCRA." *Id.* at *5.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Other courts have adopted the reasoning in *Carbajal* and *D'Hedouville* since, dismissing similar class action complaints for alleged violations of the TUCSRA stemming from the use of email tracking pixels. *See, e.g., Mills v. Saks.com LLC*, No. 1:23-cv-10638 (S.D.N.Y. Jan 6, 2025) (granting defendant's motion to dismiss, concluding that even if the plaintiff had standing, her claim would fail on the merits, because none of the information allegedly collected by the tracking pixels constitutes a "communication service record" under the TUCSRA); *Smith v. Target Corporation, et al.*, No. CV 2024-025462 (Ariz. Super. Ct. Jan. 10, 2025) (holding that the complaint failed to state a claim under the TUCSRA, because, "In short, sending marketing emails and collecting information through tracking pixels – simply is not covered by the [statute]."); *Camp v. Sephora USA Inc.*, No. 24-cv-07330-TLT (N.D. Cal. Jan. 24, 2025) (holding that the complaint failed to state a claim under the TUCSRA, because the plaintiff failed to allege that the defendant procured a record from a "communication service provider" and none of the information allegedly collected by the tracking pixels constitutes a "communication service record" under the TUCSRA).

As neither Salesforce nor Lowe's are alleged to have illegally procured information covered by the TUCSRA, Plaintiff has not stated a claim, and the Complaint should be dismissed, with prejudice.

**IV. CONCLUSION**

For the foregoing reasons, Salesforce respectfully requests the Court dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

DATED this 4th day of March, 2025.

SNELL & WILMER L.L.P.

By: *s/ Emily R. Parker*

Gregory J. Marshall
Emily R. Parker
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556

*Attorneys for Defendant Salesforce, Inc.*

Snell & Wilmer L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Gregory J. Marshall (#019886)
Emily R. Parker (#036286)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
gmarshall@swlaw.com
eparker@swlaw.com

*Attorneys for Defendant Salesforce, Inc.*

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Ivonne Carbajal, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware corporation,

Defendants.

No. 2:25-cv-00041-DJH

**CONSULTATION CERTIFICATE FOR SALESFORCE, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Salesforce, Inc. certifies, pursuant to LRCiv. 12.1(c) and this Court's Order (Doc. 5), that it conferred in good faith with counsel for Plaintiff. Salesforce notified Plaintiff's counsel of the issues asserted in the Motion, and the Parties were unable to reach an agreement whether the pleading needed to be cured or was curable in any part by a permissible amendment.

DATED this 4th day of March, 2025.

SNELL & WILMER L.L.P.

By: *s/ Emily R. Parker*

Gregory J. Marshall
Emily R. Parker
One East Washington Street
Phoenix, Arizona 85004-2556

*Attorneys for Defendant Salesforce, Inc.*

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000