James X. Bormes (*pro hac vice*)
Illinois State Bar No. 620268
Catherine P. Sons (*pro hac vice*)
Illinois State Bar No. 6290805
LAW OFFICE OF JAMES X. BORMES, P.C.
8 South Michigan Avenue, Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR
PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan (*pro hac vice*)
Illinois State Bar No. 6273422
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com

*Attorneys for Plaintiff*

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivonne Carbajal, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware corporation.<br><br>Defendant. | No.: 2:25-cv-00041-DJH<br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT LOWE'S HOME CENTERS, LLC'S RULE 12(b)(6) MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I.     Summary ................................................................................................. 1

II.    Legal Standard....................................................................................... 1

III.   Arizona Law Creates a Civil Cause of Action for Arizona Residents
       Whose Communication Service Records Were Procured, Sold or
       Received in Violation of A.R.S. § 44-1376 *et seq*... ................................ 1, 2

IV.    Facts...................................................................................................... 2

       A.     Email Tracking Pixels ................................................................. 2

       B.     Defendant's Email Tracking Pixel .............................................. 3

V.     Argument............................................................................................... 4

       A.     The Records and Information Defendant Procured Fall Within
              the Act's Definition of "Communication Service Records"............. 4

              1.  The Act Has No "Communication Service Provider"
                  Requirement".................................................................... 5

              2.  The Categories of "Subscriber Information" Include The
                  Very Records and Information That Defendant Procured by
                  Deceptive Means and Without Authorization ............................ 8

              3.  Other Provisions of the Act Regarding "Public Utility Records"
                  And "Telephone Records" Confirm that "Communication
                  Service Records" Are Not Limited to Records Held
                  by a "Communication Service Provider" ............................... 9, 10

              4.  The Act's Legislative History Supports Plaintiff ...................... 11

       B.     Plaintiff Has Sufficiently Alleged that Defendant Obtained
              "Communication Service Records" .......................................... 12, 13

              1.  Plaintiff Has Sufficiently Alleged Defendant Obtained Her
                  "Access Logs" .................................................................. 13

              2.  Plaintiff Has Sufficiently Alleged Defendant Obtained "Records

i

of the Path of An Electronic Communication Between
The Point of Origin and the Point of Delivery"........................... 14

3.  Plaintiff Has Sufficient Alleged Defendant Collected Information
About "the Nature of the Communication Service Provided" ... 15

C.    Plaintiff Has Sufficiently Alleged that Defendant Knowingly
Used a Hidden Electronic Tracking Device Without
Plaintiff's Authorization and By Deception..................................... 15

D.    In Order to State a Cause of Action Under the Act, Plaintiff
Does Not Have to Allege That She is a Customer of a
Communication Service Provider ................................................ 16, 17

VI.    Conclusion ................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*AAA Cab. Serv., Inc. v. Indus. Comm'n of Arizona,*
213 Ariz. 342, 344 (Ariz. Ct. App. 2006) ............................................................ 5, 8

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ...................................................................................... 1

*Buckey v. Cty. of Los Angeles,*
968 F.2d 791, 794 (9th Cir. 1992) .......................................................................... 1

*Carbajal v Home Depot,*
2024 WL 5118416 (D. Ariz. Dec. 16, 2024) ........................................................ 7

*City of Flagstaff v. Mangum,*
164 Ariz. 395 (1999) .............................................................................................. 7

*D'Hedouville v. H&M Fashion,*
No. C20243386 (Ariz. Sup. Ct., Pima Cnty. Oct. 11, 2024) ................................ 7

*Harris v. Harris,*
935 F.3d 670 (9th Cir. 2019) .............................................................................. 5, 7

*Keene Corp. v. United States,*
508 U.S. 200, 208 (1993) ...................................................................................... 7

*Pit River Tribe v. Bureau of Land Mgmt.,*
939 F.3d 962 (9th Cir. 2019) .............................................................................. 5, 7

*Russello v. United States,*
464 U.S. 16, 23 (1983) .......................................................................................... 8

*Smith v. Target,*
No. CV 2024-025462 (Ariz. Super. Ct., Maricopa Cty. Jan. 10, 2025) ............... 7

*State v. Ewer,*
254 Ariz. 326, 331 (2023) ..................................................................................... 12

*Williams v. Pacific Sunwear,*
No. CV-24-02015-PHX-JJT (D. Ariz. Apr. 16, 2025) ......................................... 7

**STATUTES**

Ariz. Rev. Stat. § 44-1376 ........................................................................... *passim*

Ariz. Rev. Stat. § 13-3001 ................................................................................. 7, 8

**RULES**

Fed. R. Civ. Pro. 8 ................................................................................................... 2

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................... 2

## I.        Summary

Plaintiff alleges that Lowe's in violation of A.R.S. § 44-1376-1376.05 (the Telephone, Utility and Communication Service Records Act or "the Act" or "TUCSRA") obtained her "communication service records" by deceptive means and without authorization when it tracked, collected and recorded her physical location and sensitive statutorily protected information and records.  Defendant procured these records and information through a hidden, undisclosed and unauthorized tracking device (pixel) that Defendant surreptitiously inserts in marketing emails.  The tracking pixel in the email is invisible to the naked eye.  The email recipients may be aware that they receive marketing emails, but they are not aware of, nor do they consent to Defendants' surreptitious tracking of their sensitive physical locations, behavior and records.  The Act is designed to prevent this very conduct.

Plaintiff premises her claim upon Defendant's procurement of a "communication service record" as that term is defined by the Act at § 44-1376(1). To succeed on her claim, Plaintiff must allege and prove: 1) Defendant knowingly procured or attempted to procure; 2) a communication service record; 3) without authorization or through fraudulent, deceptive or false means. A.R.S. § 44-1376.01(A)(1). As set forth below, under Rules 8 and 12(b)(6), Plaintiff has sufficiently alleged all three elements and hence, a cause of action under the Act.

## II.       Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When analyzing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).

## III.      Arizona Law Creates a Civil Cause of Action for Arizona Residents Whose

**"Communication Service Records" Were Procured, Sold or Received By Deception or Without Authority.**

Title 44 of the Arizona Revised Statutes ("Title 44") is entitled "Trade and Commerce."  Chapter 9 of Title 44 ("Chapter 9") is entitled "Trade Practices Generally." Article 20 of Chapter 9, A.R.S. § 44-1376 *et seq*., is entitled "Telephone, Utility and Communication Service Records."  A.R.S. § 44-1376 *et seq*. prohibits procurement of any "communication service record" (including email records) of "any resident of this state without the authorization of the customer to whom the record pertains, or by fraudulent, deceptive, or false means." A.R.S. § 44-1376.01.

A.R.S. § 44-1376(1) defines "communication service record" as follows: "'Communication service record' includes subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record."

A.R.S. § 44-1376.04(A)(2) allows Arizona residents to pursue civil actions and civil remedies: "[i]n a civil action, a customer whose communication service records were procured, sold or received in violation of this article may recover from the person that committed the violation the following relief…2. Damages equal to the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation but in no case shall a person entitled to recover received less than one thousand dollars."

**IV.    Facts**

    **A.    Email Tracking Pixels**

Despite Arizona law prohibiting the practice, companies embed trackers within e-mails without first obtaining Arizonans' consent. (ECF No. 10, Am. Compl., ¶ 33).  Indeed,

2

"[a] 2018 Princeton study on email tracking tested over 12,000 emails from 900 senders offering mailing list subscriptions and found that 70% contained trackers."[1] (Am. Compl., ¶ 33).  These trackers are known as "spy pixels."  (*Id*., ¶ 34).

A spy pixel is typically a 1x1 (one pixel high by one pixel long) image. By deliberate design, "[t]he spy pixel is so small it is basically impossible to see with the naked eye"[2] even if a person knows where to look.  (*Id*., ¶¶ 35, 36).  A hidden email spy pixel is used to collect, measure and record various metrics while gathering information and records about email recipients. (*Id*., ¶ 37).

The objective of a spy pixel is to collect the information and records without the knowledge of the recipient of the email. (*Id*., ¶ 39.)  The spying effect is that, without the email recipient choosing to do so, the result of opening the email is to trigger a tracking device that collects and records various statutorily protected information and records such as: the physical location of the resident; the device used by the resident when opening or reading the email; time logs of their email access; whether they opened, printed or forwarded the email; the IP address of the resident; the associated email addresses of the resident and their email client type; email path data used for purposes such as linking an Arizona resident's IP address with a physical address associated with that resident; the time they spent reading the email and the amount of times they opened the email.  (*Id*., ¶¶ 3, 40, 49).  To activate a spy pixel, recipients need only to open the email. (*Id*., ¶ 41).

**B.    Defendants' Tracking Pixel**

Defendants Lowe's and Salesforce embedded a tracking pixel in marketing e-mails that Lowe's sent to Carbajal.  (*Id*., ¶ 3, 42-72)  Lowe's utilized a tracking pixel to track, among other things, the time and place of where Plaintiff opened emails, her IP address,

---

[1]    *See* Mikael Berner, The Business of Email Tracking: What To Know About Spy Pixels In Your Inbox, FORBES (Jun 9, 2022), https://www.forbes.com/sites/forbestechcouncil/2022/06/09/the-business-ofemail-tracking-what-to-know- about-spy-pixels-in-your-inbox/?sh=2084ee793fec

[2]    *See* Becky Willeke, Spy pixels are hiding in your emails; so what can you do about it?, FOX 2 NOW (Mar. 15, 2021), https://fox2now.com/news/tech-talk/spy-pixels-are-hiding-in-your-emails-so-what-can-youdo-about-it/.

the type of device she used to open the email, her associated email addresses, email path data used for linking her IP address with her physical address, among other things. (*Id*., ¶ 3, 42-72).  Plaintiff was unaware that tracking pixels were embedded in the e-mails that Defendants sent her and that Defendants collected and used the records and information described herein. (*Id*., ¶ 62).  Plaintiff did not authorize Defendants to use these spy pixels or to procure the records and information described herein. (*Id*., ¶ 64, 65, 66, 67, 68, 69, 70, 71, 72, 96, 97).

**V.    Argument**

> **A.    The Records and Information Defendant Procured Fall Within the Act's Definition of "Communication Service Records."**

Defendant states that "Plaintiff does not allege that Defendants unlawfully procured any records created and held by any of her communication service providers.  Rather, the Complaint charges that Defendants created their own records about her communication with them. See Compl., ¶¶ 3, 16."  (ECF No. 14, Mtn., p6).  First, Defendant's characterization of Plaintiff's allegations is not accurate.  As set forth on pages 7-8 below, Plaintiff does allege that Defendants procured her "communication service records" from communication service providers and she further alleges that Defendants created their own records and profile of Plaintiff that they built directly from – and populated with – information from "communication service records" it procured.

Second, Defendant cites Paragraphs 3 and 16 of Plaintiff's Amended Complaint to argue that "the complaint charges that Defendants created their own records about her communications with them." (Mtn., p6).  However, both paragraphs state that Defendant's hidden tracking pixel surreptitiously procured and collected records and information that is protected by the Act from deceptive or unauthorized procurement.  That Lowe's created records from records it procured by deceptive means and without authority does not shield it from liability under the Act and it ignores that Lowe's procured the records and information in the first place.

Third, for the reasons set forth below, Plaintiff has sufficiently alleged that Defendant procured "communication service records" as that term is defined in the Act.

4

Plaintiff has also alleged that Defendant procured the records and information from a communication service provider, an allegation that is not even necessary to state a civil cause of action under the Act.

### 1.    TUCSRA Has No "Communication Service Provider" Requirement.

Lowe's argues that Plaintiff "does not and cannot allege that Defendants' pixels capture any record generated or held by a communication service provider." (MTD, p8.). However, nothing in the Act limits its application solely to communication service providers. The words "communication service provider" do not appear anywhere in the Act. Defendant fails to cite any such "plain language" of the Act that protects only records and information maintained by a communication service provider because none exists.

Defendant's argument requires the Court to read in words, definitions and requirements not present anywhere in TUCSRA. That is impermissible and erroneous. *AAA Cab Serv. v. Indus. Comm'n of Arizona*, 213 Ariz. 342, 344 (Ct. App. 2006)("This court cannot write a term in the statute that the legislature did not include."); *Harris v. Harris*, 935 F.3d 670, 674 (9th Cir. 2019)("It is not a judge's job to add to or otherwise re-mold statutory text to try to meet a statute's perceived policy objective. Instead, we must apply the statute as written."); *Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019)("It is not our practice to read words into statutory provisions.").

It makes sense that the Act is not limited to claims against only a communication service provider because the Act is meant to protect Arizona residents from "any person" procuring defined records and information about them without their consent or by deceptive means: "[a] person shall not procure, attempt to procure, solicit or conspire with another to procure a…communication service record". A.R.S. § 44-1376.01(A)(1).

Lowe's characterizes Plaintiff's allegations as asserting that "Defendants create new records of their own about her messages" and therefore, the information and records Defendant compile is not a communication service record. (Mtn., p8.) Because Defendant may have created a new document with records and information that it obtained from a communication service record does not negate that Defendant extracted information from

the protected records and information to build its profiles of Arizona residents.

Defendant also argues that it is not a "communication service provider" and therefore it cannot be held liable under the Act. (Mtn. p8). To adopt such a reading and requirement of the Act would mean that any person or entity would be permitted to procure "communication service records" by deceptive means or without authorization, as long as they are not a "communication service provider." Such an interpretation is obviously not what the Arizona legislature intended when it drafted the Act to explicitly state that "[a] **person** shall not do any" of the delineated acts. A.R.S. 44-1376.01(A).

Lowe's argues that the Court should read a "communication service provider" requirement into the Act because the Arizona Eavesdropping and Communication Act, A.R.S. § 13-3001, *et seq.* ("ECA"), contains such a limitation. (Mtn., p7). But that only further supports Plaintiff's position: unlike TUCSRA, the ECA specifically includes a definition of a "communication service provider" at A.R.S. § 13-3001(3)("'Communication service provider' means any person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services."). TUCSRA does not have a definition of or limitation of a "communication service provider." Further, the ECA specifically states that a person will be liable under the ECA if the individual:

> "1. Intentionally and without lawful authority obtains any knowledge of the contents of a wire or electronic communication ***by connivance with a communication service provider or its officer or employee***.
>
> 2. ***Is a communications service provider, officer or employee of a communications service provider*** and intentionally divulges to anyone but the person for whom it was intended…the contents or the nature of a wire or electronic communication entrusted to the communications service provider for transmission."

A.R.S. § 13-3006 (emphasis added). The ECA specifically includes a "communication service provider" requirement, while the Act contains no such language or requirement. The fact that the ECA is narrower, explicitly limited and actually defines a "communication service provider" is clear evidence that the legislature knew how to include such a

1    limitation when it was intended. And it intentionally chose not to do so with TUCSRA.

2          In support of its argument that the Act does not apply to Defendant because it is not

3    a "communication service provider" under the Act and that the records and information are

4    not "communication service records," Defendant understandably cites the district and trial

5    court rulings in *Williams v. Pacific Sunwear*, No. CV-24-02015-PHX-JJT (D. Ariz. Apr.

6    16, 2025), *Carbajal v. Home Depot*, 2024 WL 5118416 (D. Ariz. Dec. 16, 2024), *Camp v.

7    Sephora*, No. 24-cv-07330-TLT, ECF No. 22 (N.D. Cal. Jan. 24, 2025), *Smith v. Target*,

8    No. CV 2024-025462 (Ariz. Super. Ct., Maricopa Cnty. Jan. 10, 2025), and *D'Hedouville

9    v. H&M Fashion*, No. C20243386 (Ariz. Super. Ct., Pima Cnty. Oct. 11, 2024).[3]  These

10   rulings found that the Act solely applies to "communication service providers" even though

11   that requirement is not found anywhere in the text of the Act.   They also read a

12   "communication service provider" requirement into the Act because the ECA specifically

13   does so.  This is erroneous because it reads language into the Act and ignores the plain

14   language of the statute.  *Harris*, 935 F.3d at 674; *Pit River Tribe*, 939 F.3d at 970.  Plus,

15   the fact that a similar statute has a "communication service provider" requirement but the

16   Act does not is not an indication that the legislature specifically intended for it to apply to

17   the Act.  As the Supreme Court of Arizona explained, "[w]here the legislature uses a term

18   within one statute and excludes it from another, the term usually will not be read into the

19   provisions from which it was excluded."  *City of Flagstaff v. Mangum*, 164 Ariz. 395, 398

20   (1999).  Lastly, it misplaces the legislative history.

21

22         This Court should deny Defendant's request that effectively asks and requires the

23   Court to read words into the Act that are not present, despite their existence or relevance

24   in the ECA, which governs separate conduct than that covered under the Act.  *Keene Corp.

25   v. United States*, 508 U.S. 200, 208 (1993) ("[O]ur duty [is] to refrain from reading a phrase

26

27   _____

     [3] *Carbajal v. Home Depot* is currently on appeal at the Ninth Circuit Court of Appeals.  *Id.*,
28   (No. 25-354).  On April 11, 2025, the Ninth Circuit stayed the *Home Depot* appeal pending
     the current appeal in *Smith v. Target*, Ariz. Court of Appeals Case No. 1 CA-CV 25-0120.
     Both appeals are addressing the issues raised by Defendant's motion to dismiss.

into the statute when Congress has left it out. '[W]here Congress includes particular language in one section of a statute but omits it in another…, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."), quoting *Russello v. United States*, 464 U.S. 16, 23 (1983); *AAA Cab Serv.*, 213 Ariz. at 344 ("This court cannot write a term into the statute that the legislature did not include.").

> **2.**   **The Categories of "Subscriber Information" Include The Very Records and Information Defendant Procured by Deceptive Means and Without Authorization.**

Defendant argues that some of the Act's examples of "subscriber information" in the definition of "communication service records" demonstrate that the Act only applies to records kept by a communication service provider. (Mtn., p8-9).  First, even if Defendant were correct that the Act only prohibits deceptively obtaining records collected by "communication service providers" – such as Internet service providers and cable companies, it would still be in violation of the Act. A person's email service provider (e.g., Gmail or Yahoo) is an example of a communication service provider. Defendant agrees with this (the Act prohibits obtaining the records that communication service providers – "like an internet service provider or a wireless carrier" – collect about their customers). (Mtn., p6, 8). Defendant, therefore, by using its hidden tracking pixel, procured records and information from a communication service provider – for example, "access logs," "records of the path of an electronic communication between the point of origin and the point of delivery" and the "nature of the communication service provided [by Gmail or Yahoo], such as electronic mail." A.R.S. § 44-1376(1). Plaintiff specifically alleges Defendant surreptitiously procures these very records and this information.  (Am. Compl., ¶¶ 3, 42-60, 49, 90, 95).

Second, Defendant focuses on certain examples of "subscriber information" in the definition of "communication service records" but ignores the types that Plaintiff alleges Defendants procured and that are actually at issue in this litigation, namely, "billing address,…electronic account identification and associated screen names…access logs, records of the path of an electronic communication between the point of origin and the

point of delivery and the nature of the communication service provided, such as…electronic mail…or other service features." (A.R.S. § 44-1376(1); Am. Compl., ¶¶ 3, 42-60, 49, 90, 95). Plaintiff alleges that Defendants' hidden tracking pixels surreptitiously procured and collected records of and information regarding Plaintiff and Arizona residents, including time logs of their email access ("access logs")(Am. Compl., ¶¶ 3, 49, 90); whether they opened, printed or forwarded the email ("records of the path of an electronic communication")(Am. Compl., ¶ 11, 16); the location of the resident ("electronic account identification…access logs…records of the path…")(Am. Compl., ¶¶ 3, 11, 16, 47, 49); the type of device used when opening or reading the email ("electronic account identification…access logs…records of the path…")(Am. Compl., ¶¶ 3, 31, 47, 49, 90); the time they spent reading the email ("electronic account identification…access logs…records of the path…")(Am. Compl., ¶¶ 3, 47, 49, 90); the amount of times they opened the email ("access logs")(Am. Compl., ¶¶ 3, 49); the IP address of the resident ("name…electronic account identification")(Am. Compl., ¶¶ 3, 49, 90); the associated email addresses of the resident ("name…electronic account identification and associated screen names")(Am. Compl., ¶ 3, 90); their email client type ("records of the path of an electronic communication…the nature of the communication service provided, such as…email")(Am. Compl., ¶ 3, 49, 90) and email path data used for purposes such as linking an Arizona resident's IP address with a physical address associated with that Arizona resident ("name, billing…address…electronic account identification…records of the path of an electronic communication between the point of origin and the point of delivery…")(Am. Compl., ¶¶ 3, 49, 90). Rule 8 does not require Plaintiff to set forth the minute details of how Defendant's tracking pixel used its software and code to collect the protected information.

Defendant argues that with respect to communication service records, Plaintiff seeks a "broad meaning that covers everything associated with a communication." (Mtn., p9). This is an exaggeration and is not true. Plaintiff only seeks the meaning expressly contained in the Act's definition of "communication service records."

**3.    Other Provisions of the Act Regarding "Public Utility Records"**

and "Telephone Records" Confirm That "Communication Service Records" Are Not Limited to Records Held By a "Communication Service."

Defendant argues that other provisions of the Act regarding "public utility companies" and "telephone companies" requires the Court to insert and read "customer service provider" into the Act's definition of "communication service records." (Mtn. p9). The Act prohibits the procurement of "a public utility record, a telephone record or communication service record" without authorization or by deceptive means.  A.R.S. § 44-1376.01(A)(1).  Although Defendant fails to mention it, the Act specifically includes a definition of a "Public utility" company or entity ("'Public utility' includes public service corporations…").  The Act does not, however, include a definition of or limitation to a "communication service provider" at all – anywhere in the Act. A.R.S. § 44-1376(3). Likewise, the Act defines a "Telephone company" ("'Telephone company' means any person that provides commercial telephone services") and a "Telephone record" ("information that is: (a) *Retained by a telephone company*…[or] (b) *made available to a telephone company*". A.R.S. § 44-1376(6) and (7) (emphasis added). However, the Act and its definition of "communication service records" contain no language at all stating that such records are only those of a "communication service provider." The legislature chose to define a public utility company and a telephone company but made no such restriction as to a "communication service provider." The Court should not read such a requirement into the Act.

Defendant also argues that liability only attaches to records maintained by a communication service provider because otherwise the Act's definition of a "public utility record" and "communication service records" would be "superfluous, since they otherwise cover much of the same information."  (Mtn., p9).  However, "public utility records" are expressly limited by the Act to records of the specific "public utility" entities defined by the Act.  There is no such limitation for "communication service records" – and its definition is broader than "public utility records" and includes records such as electronic account identification records, associated screen names, toll bills, access logs, records of

10

the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication services provided – none of which are included in or covered by the definition of "public utility records."  A.R.S. § 44-1376(1) and (4).  Thus, the definitions of the two types of records are not superfluous, regardless of whether the 44-1376(1) is or is not limited to only communication service providers.

Defendant further argues that the information and records obtained by the hidden tracking device consist of "records created by a party to a communication."  (Mtn, p.10).  First, this underscores Plaintiff's allegations: Lowe's and Salesforce together used a hidden tracking device to procure unauthorized information and records and in fact did not disclose the pixel or that both Lowe's and Salesforce obtained the information and records.  Plaintiff did not even know that Salesforce was "a party to" any "communication", nor did Defendants ever inform her so.  (Am. Compl., ¶¶ 4, 5, 62, 63, 72).  Defendant characterizes its conduct as merely creating its own records, which it did, but it ignores and fails to mention that the records, database and profile it created are made with and extracted from the data and records from the communication service records it procured about Plaintiff.

Defendant argues that Plaintiff essentially seeks to push an elephant through a mousehole.  (Mtn., p10).  Rather, Plaintiff is highlighting the elephant in the room: Defendant is by deception and without authority collecting, recording and using very personal information and behavior of Arizona residents, in violation of a specific Arizona statute that Defendant should have and easily could have complied with but did not.

### 4. The Act's Legislative History Supports Plaintiff

Lowe's argues that Plaintiff's claims should be dismissed because the Act's legislative history shows that it was enacted "in response to a particular narrow concern: that bad actors would impersonate consumers to extract personal information from communication service providers with which those consumers held accounts and who maintained records about the customers."  (Mtn., p10).  Yet, this tracks Plaintiff's allegation: Salesforce developed a hidden email tracking pixel, it agreed with Lowe's to hide it in Lowe's marketing emails (in a form of impersonation and deception) and to have it activate and collect personal information from the email recipients, without providing

any notice or information to the Plaintiff.  Both scenarios involve using deception to extract personal information from communication service records.

Second, the Court must "predict" how an Arizona court would interpret the statute, and in Arizona, courts do not rely on legislative history to derive legislative intent when the plain meaning of the statute is unambiguous.  *In re McLaughlin*, 252 Ariz. 324, 326 ¶ 15 (2022)("Legislative history is not a substitute for clear legislative language"); *State v. Ewer*, 254 Ariz. 326, 331 (2023)("We do not consider legislative history when the correct legal interpretation can be determined from the plain statutory text.").  As set forth above, the Act is not ambiguous.  Therefore, this Court should examine the plain unambiguous language of the Act to interpret it.

Third, the initial Telephone Records Act of 2006 specifically prohibited any person from procuring telephone records of Arizona residents through fraudulent or deceptive means.  See AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (4/24/26).  The statute was specifically amended a year later to include "public utility records' and "communication service records," indicating the statute is not limited to telephone pretexting or public utility pretexting.

In passing the 2007 bill that added "public utility records" and "communication service records," the Arizona legislature noted that "The Federal Trade Commission defines pretexting as the practice of getting personal information under false pretenses.  Pretexters use a variety of tactics to obtain information."  See Ariz. Sen. Fact Sheet for H.B. 2726, 2007 Reg. Sess. H.B. 2726 (April 20, 2007).  This is exactly what happened here: Lowe's leads its email recipients to believe they are receiving a marketing email, when in fact the email recipients are also activating a concealed and hidden tracking advice when they simply open the email.   Defendant never informed Plaintiff that it embedded hidden tracking devices in emails that recorded her personal behavior and location or that it collected and used her communication service records. As the Arizona legislature noted in amending the statute in 2007, "Pretexters use a variety of tactics to obtain information" and Defendant's hidden email tracking pixels is one of those tactics.

**B.     Plaintiff   Has   Sufficiently   Alleged   That   Defendant   Obtained**

1    "Communication Service Records."

2       Defendant argues that even if the Act's scope is not limited to records of

3    communication service providers, Plaintiff "has not alleged that Lowe's collected any

4    information listed in the statutory definition." (Mtn., p11).  To the contrary, and as

5    discussed above and below, Plaintiff has specifically alleged that Defendant obtained a

6    variety of the Act's specifically delineated "communication service records."

7       **1.    Plaintiff Has Sufficiently Alleged Defendant Obtained Her**

8       **"Access Logs"**

9       Defendant argues that "Plaintiff does not plausibly allege that Lowe's collected

10   'access logs' without her permission." (Mtn. p11).  However, Plaintiff specifically alleges

11   Defendant procures an "access log" of her email reading habits and locations in order to

12   track Plaintiff's behavior. (A.R.S. § 44-1376(1); Am. Compl., ¶¶ 3, 8, 49, 90).  Defendant

13   procures, *inter alia*, access logs from which it collects, tracks and records the time and

14   place of when and where she opened the email; how long she read the email; her physical

15   location; her email client type; her IP address; her device information; and whether and to

16   whom she forwarded the email. (A.R.S. § 44-1376(1); Am. Compl., ¶¶ 3, 11, 16, 40, 49,

17   90, 95).

18      The Act does not define "access logs" and the dictionary definition is dispositive

19   here.  In Arizona, "[a]bsent a statutory definition, courts generally give words their

20   ordinary meaning and may look to dictionary definitions." *In re Drummond*, 543 P.3d

21   1022, 1025 (Ariz. 2024).  "Access" means "to open or load (a computer file, an Internet

22   site, etc.)" and "Log" means "to make a note or records of: enter details of or about in a

23   log." Access, Merriam-Webster, https://www.mirrian-webster.com/dictionary/access (last

24   visited on May 6, 2025); Log, Merriam-Webster, https;//www.merriam-

25   webster.com/dictionary/log (last visited May 6, 2025).  Defendant, thus, "logs" each time

26   Plaintiff "accesses" her emails. (*See e.g.*, Am. Compl., ¶ 3, 49, 90, 95)(Defendant's

27   tracking pixel procures "time logs of email access…").  "Access log" is a computer science

28   term used to describe a file "that records all events related to…user access to a resource on

a computer."[4]  An access log allows "software developers [and] operation engineers…to monitor how their application is performing, who is accessing it, and what's happening behind the scenes."  *Id.* The information collected by an access log includes the date and time of client access, the client IP address or hostname, and username.  *Id.*  "An access log is a list of all requests for individual files – such as…embedded graphic images and other associated files that get transmitted-that people…have made from a website….  These server logs record the history of page request made to the server and other pertinent information."[5]   As Plaintiff alleges, this is the kind of information and records that Defendant's email spy pixels captured from the access logs.

> **2.   Plaintiff Has Sufficiently Alleged Defendant Obtained Her "Records of the Path of an Electronic Communication Between the Point of Origin and the Point of Delivery."**

Plaintiff alleges that Defendant procures the "records of the path of an electronic communication between the point of origin and the point of delivery" by tracking and recording when an email is opened and read, the recipient's location, how long the recipient read the email, whether they forwarded the email, and the type of device used by the recipient and the recipient's IP address.  (*See* Am. Compl., ¶ 3, 11, 16, 49, 90) ("Defendants use the spy pixels to extract…time logs of email access, associated email addresses, email client type, IP addresses, email path data used to, inter alia, identify and reveal the physical address associated with an Arizona resident's IP address, and device information."); *Hewlett-Packard's Pretexting Scandal: Hearing Befote the Subcomm. On Oversight and Investigation of H. Comm. On Energy and Commerce*, 109th Cong. 754 (2006), ("I think [people's] expectation of privacy is that a corporation would not use tracer technology to try to follow where they sent e-mail.").  Thus, Plaintiff sufficiently alleges "records of the path of an electronic communication".

Defendant argues that "everything that Plaintiff alleges Lowe's was able to

---

[4]   Arfan Sharif, *What Is An Access Log*, Crowstrike (Dec. 21, 2022), https://www.crowdstrike.com/cybersecurity-101/observability/access-logs.

[5]   Andrew Zola, *Access Log Definition*, Techtarget, https://www.techtarget.com/searchsecurity/defintion/access-laog (last updated Jan. 2022).

obtain…reflects what happened…after 'the point of delivery.'" (Mtn., p12). Not so. Plaintiff clearly alleges that spy pixels track whether an email was forwarded. (Am. Compl., ¶¶ 11, 16). Moreover, Defendant still procured the other protected communication service records described herein without notice, without authorization and by hidden and deceptive means.

> **3.** **Plaintiff Has Sufficiently Alleged Defendant Collected Information About "the Nature of the Communication Service Provided."**

Defendant argues that Plaintiff cannot allege that Lowe's collected information about "the nature of the communication service provided." (Mtn., p13). Yet, the Act includes emails as one of the examples of this category of documents. A.R.S. § 44-1376(1)("…the nature of the communication service provided, such as…electronic mail".). Defendant argues that some of the enumerated examples of "the nature of the communication service provided" (e.g., voice mail, email) are "examples of services that a consumer might obtain from their telecommunications provider…Nothing that could fall into that category is at issue in the Complaint." (Mtn., p13). However, telecommunication companies are not the only organizations that provide email services – many other organizations do, including, for example, tech companies and internet service providers. Nothing in the Act limits liability to only a telephone company or a "telecommunication provider."

> **C.** **Plaintiff Has Sufficiently Alleged that Defendant Knowingly Used A Hidden Electronic Tracking Device Without Plaintiff's Authorization.**

Defendant argues Plaintiff has not sufficiently alleged that Defendant knowingly "collected her information without her authorization" or "possessed any particularized awareness or belief that Plaintiff had not authorized it to use pixels in its emails to her." (Mtn., p14). First, Plaintiff alleges that Defendant engaged in intentional conduct when it took intentional steps to actively hide a tracking device in an email it intentionally sent to Plaintiff, and this hidden tracking pixel did exactly what Defendant intended it to do. (*Id.*,

¶¶ 42-72).  Plaintiff specifically alleges that Defendant never informed her about it.  (*See e.g.*, Am. Compl., ¶¶ 4, 5). Plaintiff further alleges that she never gave her consent or authorization to Defendant to insert active tracking devices in emails it sent her or to track her physical location and procure her communication service records.  (*See e.g.*, Am. Compl., ¶¶ 6, 64-67, 72, 96, 97).  From these allegations, several reasonable inferences drawn in Plaintiff's favor are: Lowe's did not accidentally use a hidden pixel that Salesforce developed to surreptitiously collect information and records; Lowe's did not accidentally hide the pixel in emails it sent Plaintiff and other Arizona residents; Lowe's did not accidentally collect information and records; and Lowe's did not accidentally share and use those records with a third party (*i.e.*, Salesforce).  Second, explicit in Defendant's assertion is that Lowe's does in fact use a hidden tracking pixel to collect records and information from unknowing Arizona residents who open Defendant's marketing emails.

There is no evidence or facts of any kind to support Defendant's argument that it did not "possess[] any particularized awareness or belief that Plaintiff had not authorized it to use pixels in the emails to her."  (Mtn., p14).  The Amended Complaint sufficiently alleges Defendant engaged in knowing conduct when it actively placed and hid a tracking device in an email to an Arizona resident who it never even told was there let alone obtained her informed consent.  The allegations are that Defendant knew its hidden pixel collected records, data and information and that Defendant did not ever obtain her authority to do so.

Moreover, Defendant's argument about whether it knowingly placed a hidden tracker in an email and did so intentionally to collect and obtain records and information without consent or by deceptive means are – at best – undeveloped at this stage.  Defendant is attempting to convert a Rule 12(b)(6) motion into a motion for summary judgment, which is improper at this stage.  Defendant advances a disputed and unsupported factual assertion in its arguments.  Understandably, Defendant does not argue that it did not knowingly plant and use a hidden tracking device to collect records and information from Plaintiff.

**D.**    **In Order to State a Cause of Action Under the Act, Plaintiff Does Not**

16

**Have to Allege That She is a Customer of a Communication Service Provider.**

Defendant argues that Plaintiff must allege she is a customer of a communication service provider in order state a cause of action under the Act. (Mtn., p14). This is not so, given that § 44-1376.01 creates liability for any person who knowingly procures a communication service record of any Arizona resident without authorization or by deceptive means. A person who engages in such conduct is liable under § 44-1376.01 regardless of whether the plaintiff is a current or former customer of a communication service provider or of Lowe's. In order to allege a cause of action under the Act, a plaintiff must allege that 1) Defendant knowingly procured or attempted to procure; 2) a communication service record; 3) without authorization or through fraudulent, deceptive or false means. A.R.S. § 44-1376.01(A)(1). Accordingly, Plaintiff is not required to allege that she is a customer of a communication service provider in order to state a civil cause of action under the Act. Moreover, the reasonable inferences from the allegations are that Plaintiff is a customer of a communication service provider given that the allegations concerns emails, tracking pixels and Defendant's procuring of communication service records.

**VI.    Conclusion**

For the foregoing reasons, Defendant's Rule 12(b)(6) Motion to Dismiss should be denied.


Dated: May 9, 2025                          Respectfully submitted,
                                            Ivonne V. Carbajal, individually and on behalf of
                                            a collective of persons similarly situated.

                                            /s/ James X. Bormes
                                            Attorney for Plaintiff

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 9, 2025, I filed this Response to Defendant Lowe's Home Centers, LLC's Motion to Dismiss via the CM/ECF system, which served notice to the following CM/ECF participants:

<u>/s/ James X. Bormes</u>
Attorney for Plaintiff