James X. Bormes (*pro hac vice*)
Illinois State Bar No. 620268
Catherine P. Sons (*pro hac vice*)
Illinois State Bar No. 6290805
LAW OFFICE OF JAMES X. BORMES, P.C.
8 South Michigan Avenue, Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

Thomas M. Ryan (*pro hac vice*)
Illinois State Bar No. 6273422
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Ivonne Carbajal, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware corporation.

Defendant.

No.: 2:25-cv-00041-DJH

**PLAINTIFF'S RESPONSE TO DEFENDANT SALESFORCE INC.'S MOTION TO DISMISS**

## I. Introduction and Summary

Plaintiff has alleged a straightforward claim that Defendant Salesforce, Inc. "Salesforce" or "Defendant" has collected her private information through tracking pixels embedded in emails sent to her, in violation of Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 *et seq.* ("TUCSRA"). As alleged in the Amended Complaint, Plaintiff never consented to this information being collected. Defendant Salesforce has moved to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff does not have standing to pursue her claims against Defendant under Federal Rule 12(b)(2), and that Plaintiff's claims fail under Federal Rule 12(b)(6). Contrary to Defendant's arguments, Plaintiff has properly alleged both standing and her claims in this matter. Defendant's motion to dismiss should be denied.

## II. Factual Background

As set forth in the Amended Complaint, Defendants embedded hidden tracking pixels in emails they sent to Plaintiff and other Arizona residents. (Am. Compl., ¶¶ 1, 11, 45). The pixels are and were intentionally designed to be invisible to the naked eye, even if one knew where to look for them. (*Id.*, ¶¶ 2, 35-39).

Defendant Salesforce's Marketing Cloud provides digital marketing automation and analytics software and services for email, mobile, social and online marketing. (*Id.*, ¶¶ 42-44). Among other things, Salesforce Marketing Cloud offers companies like Lowe's the service and product of embedding marketing emails with nearly invisible pixels, not transparent to the naked eye, which track the consumer and their activities on their own personal computer or mobile device. (*Id.*, ¶ 45). Salesforce's hidden embedded email tracking pixels are used by Lowe's and monitor Plaintiff and other Arizona residents' behavior. (*Id.*, ¶ 50).

Defendants' hidden tracking pixels surreptitiously procured and collected records of, and information regarding, Plaintiff and Arizona residents, including time logs of their email access, whether they opened, printed or forwarder the email, the location of the resident and device used when opening or reading the email, the time they spent reading

the email, the amount of times they opened the email, the IP address of the resident, the associated email addresses of the resident, and their email client type and email path data used for purposes such as linking an Arizona resident's IP address with a physical address associated with that Arizona resident. (*Id.*, ¶¶ 3, 16, 39-40, 47-49).

Defendants did not inform Plaintiff and other Arizona residents that the emails contained hidden tracking pixels, nor that they procured, collected and tracked the records and information set forth above. (*Id.*, ¶¶ 4-5, 11). Nor did Defendants obtain their consent to do so. (*Id.*, ¶¶ 6, 12).

Further, as Plaintiff has properly alleged, this Court has personal jurisdiction over Defendants because Defendant Salesforce is registered to do business in Arizona as a foreign corporation, and by filing its articles of incorporation with the Arizona Corporation Commission and by having an authorized agent to accept service, Defendant has consented to accept service of suits that arise in Maricopa County. (*Id.*, ¶¶ 23, 30).

In addition, Defendant Salesforce does business throughout Arizona, where it sells and provides customer service relationship management software to companies doing business in and throughout Arizona, including Defendant Lowe's and government offices and agencies of the state of Arizona. (*Id.*, ¶¶ 25-26). Defendant Salesforce manages and operates a data center in the Phoenix, Arizona metropolitan area. (*Id.*, ¶ 27).

Further, the Court also has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws and benefits of doing business in this State and in Maricopa County, and Plaintiff's claims arise out of Defendants' forum-related activities. In addition, a substantial portion of the events giving rise to Plaintiff's claims occurred in this county. Finally, Defendants knowingly and intentionally procured and collected the records and information at issue from Plaintiff's and Arizona residents' devices including their desktop computers, mobile phone and notebooks. (*Id.*, ¶ 31).

III. Standard of Review

A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek to dismiss a complaint because the court lacks personal jurisdiction. The plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("'[W]e only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.'"). "[U]ncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.

B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss all or portions of a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Only where a plaintiff fails to "nudge[ ] [his or her] claims ... across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680. In other words, dismissal under Rule

12(b)(6) is proper only when a complaint exhibits either a "lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

IV. Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376

TUCSRA states that "A person shall not do any of the following: 1. Knowingly procure, attempt to procure, solicit or conspire with another to procure…a communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." Ariz. Rev. Stat. § 44-1376.01. The Act broadly defines "communication service record":

> "Communication service record" ***includes*** subscriber information, ***including name***, billing or installation address, length of service, payment method, telephone number, ***electronic account identification*** and ***associated screen names***, toll bills or ***access logs***, ***records of the path of an electronic communication between the point of origin and the point of delivery*** and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, ***electronic mail***, paging or other service features.

A.R.S. § 44-1376(1) (emphasis added). The Act gives Arizona residents the right to pursue a civil cause of action and civil remedies against any person who procured, sold or received the protected records and information without authorization: "[i]n a civil action, a customer whose communication service records were procured, sold or received in violation of this article may recover from the person that committed the violation the following relief…2. Damages equal to the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation but in no case shall a person be entitled to recover received less than one thousand dollars." A.R.S. 44-1376.04(A)(2).

Plaintiff premises her claim upon Defendant's procurement of a "communication service record." To succeed on her claim, Plaintiff must allege: 1) Defendant knowingly

procured or attempted to procure; 2) a communication service record; 3) without authorization or through fraudulent, deceptive or false means. A.R.S. § 44-1376.01(A)(1).

V. Argument

A. Plaintiff Has Established Specific Personal Jurisdiction Over Salesforce

1. Specific Personal Jurisdiction Standard

Defendant first argues that Plaintiff lacks standing to assert her claims in this Court. By this argument, Defendant essentially contends that the Arizona State Legislature codified a law authorizing "a civil action" that cannot be adjudicated in Arizona courts. Defendant is mistaken.

The Ninth Circuit has recently addressed and reiterated the standards for specific personal jurisdiction. In *Briskin v. Shopify*, the plaintiff alleged that "in the process of facilitating his credit card transaction for the merchant, Shopify took the opportunity to install "cookies" on the device he used to buy the athletic wear and that Shopify did so without his knowledge or consent." *Briskin v. Shopify*, 2025 U.S. App. Lexis 9410, at *11-12 (9th Cir., April 25, 2025). The plaintiff further alleged that "Shopify surreptitiously implanted cookies that permanently remained on Briskin's device, tracked its physical location, and collected data regarding Briskin's online shopping activity." *Id*. at *12. He further alleged that "Shopify used the resulting data to compile a consumer profile that Shopify marketed widely, including to many California merchants." *Id*. The district court granted Shopify's motion to dismiss for lack of personal jurisdiction, and the Ninth Circuit reversed. In doing so, it gave an extensive analysis of the standards to establish personal jurisdiction. *Id*. at *21-34.

As the Court explained, "the Supreme Court has long interpreted *International Shoe*'s inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant to require that courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Shopify,* 2025 U.S. App. Lexis 9410, at * 21 (quoting *Walden v.Fiore, 571 U.S. 277, 283-84, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)* (quoting *Keeton v. Hustler Mag., Inc., 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)*) ("In judging

minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation'" (quoting *Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)*)); *Int'l Shoe Co., 326 U.S. at 316, 320.*

The Ninth Circuit analyzes specific personal jurisdiction under a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Shopify*, 2025 U.S. App. Lexis 9410, at *22 (citing *Schwarzenegger v. Fred Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 *(*9th Cir. 2004) (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)).

The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff fails to meet this burden, the court lacks specific personal jurisdiction. If the plaintiff succeeds, then the burden shifts to Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The Court further explained that "for claims sounding in tort, like the privacy and data use violations [plaintiff] asserts here, we most often employ a purposeful direction analysis." *Id*. at *22-23. "To analyze whether the tort was purposefully directed to the forum state we employ the "*Calder* effects" test, which "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id*. at *23 (quoting *Mavrix Photo,* 647 F.3d at 1228 (quoting *Yahoo! Inc. v. La*

*Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

The purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state. *Id*. at *24 (citing *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc.,* 433 F.3d at 1206). This test does not require that the defendant be physically present in the forum state, as "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id*. (citing *Burger King,* 471 U.S. at 476). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.*

The Court also set forth an extensive analysis of its application of the personal jurisdiction standards in the "ever-evolving worlds of technology, electronic communication, and e-commerce." *Shopify*, 2025 U.S. App. Lexis 9410, at *24-34. As the Court explained:

> as the Supreme Court noted in *Walden*, "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, *or some other means*—is certainly a relevant contact." *Walden,* 571 U.S. at 285 (emphasis added and citation omitted). Here, though Shopify's entry into the state of California is by electronic means, its surreptitious interception of Briskin's personal identifying information certainly is a relevant contact with the forum state.

*Id*. at 37. The Court held that "an interactive platform "expressly aims" its wrongful conduct toward a forum state when its contacts are its "own choice and not 'random,

isolated, or fortuitous,'" *Ford Motor Co.,* 592 U.S. at 359 (quoting *Keeton,* 465 U.S. at 774), even if that platform cultivates a "nationwide audience[] for commercial gain." *Id.* at *41 (quoting *Mavrix Photo,* 647 F.3d at 1230). The Court concluded that Shopify deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' phones so that it could later sell the data it obtained, in a manner that was neither "random, isolated, [n]or fortuitous." *Id*. at *43-44 (citing *Ford Motor Co.,* 592 U.S. at 359 (quoting *Keeton, 465 U.S. at 774*)).

In *Shopify*, the Court ultimately held that the plaintiff sufficiently alleged personal jurisdiction:

> Applying our traditional personal jurisdiction precedent to the ever-evolving world of e-commerce, we conclude that jurisdiction is proper because Shopify's allegedly tortious actions deliberately targeted Briskin in California: (1) Shopify concedes that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device; and (2) the complaint alleges that Shopify uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent.

*Shopify*, 2025 U.S. App. Lexis 9410 at *12-13.

2. <u>Plaintiff Has Satisfied the Elements of the Personal Direction Test</u>

Similar to the plaintiff in *Shopify*, Plaintiff here has sufficiently demonstrated specific personal jurisdiction. Plaintiff has alleged that Defendant Salesforce worked with Defendant Lowe's to secretly and intentionally embed the spy pixels in their emails. (Am. Compl., ¶ 1-2, 11, 35-39, 44-45). Plaintiff further alleges that she opened those emails at her residence in Arizona. (*Id.*, ¶ 13-15). This conduct was deliberate and hidden from Plaintiff by both Defendants. Plaintiff further alleged that through the use of the spy pixels Defendants collected significant amounts of data regarding Plaintiff thereby invading her privacy causing damage to her. (*Id.*, ¶ 3, 10-12, 47, 90, 93-100). Accordingly, Plaintiff

has satisfied the three elements of the purposeful direction test. *Shopify*, 2025 U.S. App. Lexis 9410, at *24.

Defendant's argument that Plaintiff does not satisfy the purposeful direction test because it did not conduct any actions towards the State of Arizona is erroneous. (Def's Motion, p. 10). As Plaintiff has alleged, the conduct at issue – embedding the hidden spy pixels – directly affected the residents of Arizona. Defendant directly provided Lowe's with technology that it knew would be used in Lowe's marketing emails and would be sent to its customers throughout the country. Under *Shopify*, that is sufficient to confer jurisdiction over Defendant. *Shopify*, 2025 U.S. App. Lexis 9410, at *37 ("though Shopify's entry into the state of California is by electronic means, its surreptitious interception of Briskin's personal identifying information certainly is a relevant contact with the forum state.") For the same reasons, Defendant's arguments that it did not "control" the content or recipients that Lowe's sent emails to which contained the tracking pixels that Defendant specifically provided to Lowe's also fail.

Further, in this case, the statute at issue unambiguously confers standing on any "customer whose communication service records, telephone records or public utility records were procured sold or receiving in violation of" TUCSRA. A.R.S. § 44-1376.04(A). Plaintiff alleges that Defendants procured her communication service records in violation of TUCSRA. (Am. Compl, ¶¶ 93-100). In this regard, she fits the exact definition for the person the act was intended to protect and whom the Arizona Legislature conferred with standing.

3. <u>Exercising Personal Jurisdiction Over Salesforce Would Not Be Unreasonable</u>

As explained above, because Plaintiff has met the first two elements to confer jurisdiction over Salesforce, Defendant bears the burden of establishing that exercising jurisdiction would be unreasonable. *Shopify*, 2025 U.S. App. Lexis 9410, at *22. Defendant has failed to do so. Defendant first asserts that it did not interject itself into the affairs of Arizona. (Def.'s Mtn., p. 11). But as explained above, Defendant has intentionally

done exactly that, by providing a platform that Lowe's would use to send emails to consumers throughout the country. And while Defendant is not headquartered in Arizona, it admits that it does have a "minimal workforce" in Arizona. (*Id*). Thus, Defendant has contacts with Arizona that permit it to face suit here.

Defendant's further argument that its evidence would come from outside Arizona also fails. (*Id*.) As alleged in the Amended Complaint, the tracking pixels at issue are technology based, and were sent to Lowe's customers via email throughout Arizona. (Am. Compl. 42-72). Defendant's evidence relates to Plaintiff and the putative class members' claims, and should not be a burden for a sophisticated company like Salesforce to produce.

Finally, Defendant's argument that the sixth factor of determining the reasonableness of specific personal jurisdiction (the importance of the forum to the plaintiff's interests in convenient and effective relief) is not met also fails. (Def's Mtn., p. 12). As Defendant itself notes, "[t]his [importance of the chosen forum] factor weighs most strongly in favor of the plaintiff if the chosen forum presents the only means of litigating a claim, or if refusing to exercise jurisdiction would force the plaintiff to pursue the case in multiple locations." *Id.* Here, there is no question that this factor weighs in favor of Plaintiff. Plaintiff has brought her claim under a specific Arizona statute and would not be able to bring this claim anywhere else. Thus, Defendant has failed to establish that specific personal jurisdiction against it would be unreasonable.

B. <u>Plaintiff Has Properly Pled Her Claim</u>

Defendant's second argument is that Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6) because Defendant is not a "communication service provider", and the spy pixel Defendants used to collect Plaintiff's private information does not qualify as a "communication service record" under TUCSRA. Defendant cites various provisions of the statute as well as legislative history in support of its argument. Contrary to Defendant's assertions, Plaintiff has sufficiently alleged a violation of the statute.

Plaintiff has alleged that a "communication service record" includes subscriber information, including name, … electronic account identification and associated screen

names, … toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as …, electronic mail….” (Am. Compl., ¶ 74). Further, Plaintiff alleges that TUCSRA gives Arizona residents the right to pursue a civil cause of action and civil remedies against any person who procured, sold or received the protected records and information without authorization. (*Id.*, ¶ 10, 73, 75-76).

Plaintiff has alleged that Defendant Salesforce offers companies like Lowe's the service and product of embedding marketing emails with nearly invisible pixels, not transparent to the naked eye, which track the consumer and their activities on their own personal computer or mobile device. (Am. Compl., ¶¶ 1, 11, 45). Defendants embedded hidden tracking pixels in emails they sent to Plaintiff and other Arizona residents. (*Id.*). The tracking pixels collected a significant amount of data from Plaintiff and other Arizona residents without their knowledge or consent. (*Id.*, ¶¶ 42-72). Thus, Defendants' use of the tracking pixels invaded Plaintiff's privacy rights, in violation of TUCSRA. (*Id.*, ¶¶ 93-101). Plaintiff has properly plead all of the elements of a violation of TUCSRA.

Further, Defendant's claim that it is not a "communication service provider" under the statute fails. Defendant's argument that Lowe's is a home improvement retailer, not a communication service provider, is without merit. (Def's Mtn, p. 13). Defendant Salesforce provided a platform for Lowe's to issue emails to its customers. In other words, Defendant directly assisted Lowe's in communicating with its customers throughout Arizona. That is the definition of a communication service provider. To hold otherwise would be nonsensical.

Defendant further argues that every court that has considered the issue has dismissed the case at issue, first citing *Carbajal v. Home Depot U.S.A., Inc.*, No CV-24-00730, 2024 U.S. Dist. LEXIS 226740 (D. Az., Dec. 16, 2024). Defendant quotes extensively from that decision in support of its argument. Plaintiff respectfully asserts that the reasoning and holding in *Home Depot* were incorrect, and notes that the plaintiff there filed a Notice of Appeal of that matter on January 15, 2025, Case No. 25-354, which is currently in its early

stages.

Defendant also cites and quotes decisions from the following cases in support of its argument: *D'Hedouville v. H&M Fashion USA, Inc.*, No. C20243386 (Super. Ct. Ariz. Oct. 11, 2024); *Mills v. Saks.com LLC*, No. 1:23:-cv-10638 (S.D.N.Y. Jan. 6, 2025); *Smith v. Target Corp.*, No. CV 2024-025462, at 4 (Super. Ct. Ariz. Jan. 10., 2025); and *Camp v. Sephora USA Inc.*, No 24-cv-07730-TLT (N.D. Cal. Jan. 24, 2025). Plaintiff respectfully contends none of these decisions are binding, and should not be adopted. Further, the *Smith* case is currently on appeal and is pending as Case No. 25-120 in Division l of the Arizona Court of Appeals. The *Camp* case also is currently on appeal and is pending as Case No. 25-1185 in the Ninth Circuit Court of Appeals.

Finally, Plaintiff hereby incorporates by reference the arguments set forth in Plaintiff's Response to Defendant Lowe's motion to dismiss, in support of this Response.

VI. Conclusion

For the foregoing reasons, Defendant Salesforce's Motion to Dismiss should be denied in its entirety.

Dated: May 9, 2025

Respectfully submitted,
Ivonne V. Carbajal, individually and on behalf of a collective of persons similarly situated.

/s/ James X. Bormes
One of Plaintiff's attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2025, I filed this Response to Defendant Salesforce Inc.'s Motion to Dismiss via the CM/ECF system, which caused notification of such service to be served on all counsel of record.

/s/ James X. Bormes
Attorney for Plaintiff