David B. Rosenbaum, 009819
Colin M. Proksel, 034133
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
drosenbaum@omlaw.com
cproksel@omlaw.com

Teresa Michaud, *pro hac vice*
Ariana E. Bustos, *pro hac vice*
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, California 90071-1560
(213) 561-3250
tmichaud@cooley.com
abustos@cooley.com

Tiana Demas, *pro hac vice*
COOLEY LLP
110 North Wacker Drive, Suite 4200
Chicago, Illinois 60606-1511
(312) 881-6500
tdemas@cooley.com

Reece Trevor, *pro hac vice*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
(415) 693-2247
rtrevor@cooley.com

*Attorneys for Defendant Lowe's Home Centers, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne Carbajal, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Lowe's Home Centers, LLC, a North Carolina Limited Liability Company, and Salesforce, Inc., a Delaware Corporation,<br><br>Defendants. | Case No. 2:25-cv-00041-DJH<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT BY LOWE'S HOME CENTERS, LLC** |

## I. INTRODUCTION

After Lowe's filed its Motion to Dismiss, yet another court agreed with Lowe's arguments and held that TUCSRA[1] does not apply to claims like Plaintiff's. *Williams v. Pac. Sunwear of Cal. LLC*, 2025 WL 1135160 (D. Ariz. Apr. 16, 2025) (Tuchi, J.) (granting judgment on the pleadings); *see also* Mot. at 2 (collecting cases). This Court, consistent with the overwhelming and unanimous authority rejecting Plaintiff's reading of TUCSRA, should do the same and dismiss with prejudice.

Plaintiff's Opposition to Lowe's Motion (the "Opposition," Doc. 22) merely repeats the Complaint's mistaken premise, rejected by every court to date, that TUCSRA is an all-purpose privacy statute and prohibits transmissions of some of the most routine information on the contemporary internet. This is wrong. TUCSRA is a narrow law with a narrow scope designed to address a narrow concern. The portions of the statute on which Plaintiff relies govern only "communication service records." As common sense suggests and as the rest of TUCSRA's text and Arizona's overall statutory structure confirms, those are "records" held by entities that maintain "communication services."

Plaintiff tries to parse individual words and phrases within TUCSRA to apply the statute to Defendants' alleged use of email analytics pixels, but her arguments are unavailing. They ignore key terms, violate basic principles of statutory interpretation, and assume away legislative history. If anything, the Opposition confirms that Plaintiff's reading of the statute would lead to absurd results—one in which nearly anyone who uses email in Arizona would be breaking the law on a daily basis.

This is not what the Arizona Legislature intended when it enacted TUCSRA to stop bad actors from impersonating consumers to obtain copies of their records from telecommunications providers.

---

[1] All defined terms herein have the same meaning as in Lowe's Motion to Dismiss Class Action Complaint (the "Motion," Doc. 14).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

## II. ARGUMENT

### A. Plaintiff misreads TUCSRA's definition of "communication service record" to argue that TUCSRA can apply to information other than "records" held by "communication service" providers.

Lowe's Motion primarily turns on whether TUCSRA protects anything other than records maintained by a provider of a communication service.[2] *See* Mot. at 6-11 (Lowe's argument that "Plaintiff cannot claim a statutory violation because she does not allege that Lowe's procured the records of a 'communication service.'"). Plaintiff insists that "communication service record" refers to any record containing any of the information listed in A.R.S. § 44-1376(1). But the Opposition's assertion that this reading respects "the plain language of the statute" is wrong. Opp. at 7. On the contrary, the "plain text" that Plaintiff invokes requires the Court to determine how "communication service" modifies the reference to "records" protected by the statute. As Judge Campbell, Judge Tuchi, and every other state and federal court to consider the issue have determined, Lowe's answer to that question is the right one: "communication service records" are only records held by entities that provide communication services.

#### 1. The definitional text favors Lowe's.

TUCSRA does not apply to "records," but to "***communication service*** records" comprising "subscriber information." A.R.S. § 44-1376(1) (emphasis added). This alone cabins the kinds of records covered by the statute. After all, "[i]f the Arizona legislature had intended the TUCSRA to apply to any record about any communication as Plaintiff contends, it could have done so by using the word 'record.'" *Carbajal v. Home Depot U.S.A., Inc.*, 2024 WL 5118416, at *3 (D. Ariz. Dec. 16, 2024). Plaintiff therefore errs in accusing Lowe's of seeking to "read in words, definitions and requirements not present

---

[2] Plaintiff attacks a strawman in asserting that Lowe's "argues that it is not a 'communication service provider' and therefore it cannot be held liable under the Act" because TUCSRA is "limited to claims against only a communication service provider." Opp. at 5-6. But Lowe's has not argued that TUCSRA liability depends on whether the defendant is a "communication service provider." Plaintiff's focus on an argument Lowe's has never made is confusing, but the Court can and should simply disregard it. *Williams*, 2025 WL 1135160, at *4 ("The critical inquiry is not who may violate the statute, but rather what constitutes a 'communication service record' under TUCSRA.").

anywhere in TUCSRA." Opp. at 5. It is Plaintiff who seeks to read "communication service" out of the definition, and the Opposition offers no alternative explanation for the use of that phrase in the statutory text.

Likewise, Plaintiff does not engage at all with the statute's limitation of a "communication service record" to a record comprising "***subscriber*** information."[3] A.R.S. § 44-1376(1) (emphasis added). As the Motion notes, the Legislature's reference to a "subscriber" suggests that it was referring to a person who subscribes to a communication service—and, therefore, "to records communication service providers maintain about their subscribers." *Home Depot*, 2024 WL 5118416, at *4. Likewise, the statutory definition includes information about "the nature of the ***communication service provided***[.]" A.R.S. § 44-1376(1) (emphasis added). All of this language "presupposes a relationship between the individual and a communication service provider to which they subscribe," so Plaintiff's alternative construction under which TUCSRA would apply to a broader set of information does not make sense. *Williams*, 2025 WL 1135160, at *4.

**2. The statutory structure favors Lowe's.**

To properly interpret TUCSRA, "the Court must consider not only the isolated definition of 'communication service record'" as Plaintiff urges, "but also how this term operates within the broader statutory scheme." *Williams*, 2025 WL 1135160 at *3. As Lowe's Motion explains and as the caselaw confirms, TUCSRA's verbatim borrowing of the defined term "communication service record" from the Eavesdropping and Communication Act ("ECA") indicates that the term has the same meaning in TUCSRA as in the ECA. *See* Mot. at 7-8 (collecting cases). The ECA, in turn, leaves no doubt that "communication service record" refers only to records held by a "communication service provider," *i.e.*, an entity that "is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." *Id.* (quoting A.R.S. § 13-3001(3)). Plaintiff does not and cannot dispute that "communication service

[3] Plaintiff contends that "subscriber information" includes "the types [of information] that Plaintiff alleges Defendants procured and that are actually at issue in this litigation," Opp. at 8, but this is a separate (and incorrect) argument to which Lowe's responds below.

record" has this meaning in the ECA, so instead, she raises two arguments against construing TUCSRA in harmony with the ECA. Both arguments fail.

First, Plaintiff suggests that it is improper to look beyond the four corners of TUCSRA to the ECA. But the Arizona Supreme Court is clear that reading a statute's text "in context with other statutes relating to the same subject or having the same general purpose" is a critical part of determining the meaning of "plain language"—not a "secondary statutory interpretation principle[.]" *SolarCity Corp. v. Ariz. Dep't of Rev.*, 243 Ariz. 477, 480 (2018); *see also Home Depot*, 2024 WL 5118416, at *3 (interpreting TUCSRA based on the ECA); *D'Hedouville v. H&M Fashion USA, Inc.*, No. C202043386, slip op. at 3 (Ariz. Super. Ct., Pima Cnty. Oct. 11, 2024); *Camp v. Sephora USA Inc.*, No. 24-cv-07330-TLT, Doc. 22, slip op. at 4-6 (N.D. Cal. Jan. 24, 2025); *Smith v. Target Corp.*, No. CV 2024-025462, slip op. at 4 (Ariz. Super. Ct., Maricopa Cnty. Jan. 10, 2025) (same).

Second, Plaintiff argues that the Legislature's omission of the ECA's "communication service provider" definition from TUCSRA must reflect a deliberate choice to expand the meaning of "communication service record." Opp. at 6-7 ("[U]nlike TUCSRA, the ECA specifically includes a definition of a "'communication service provider'"). Not so, and Plaintiff's argument depends on a misreading of the ECA. Contrary to the Opposition's suggestion, the ECA does not have a separate "'communication service provider' requirement" built into its textual definition of "communication service record." Opp. at 7. Both TUCSRA and the ECA contain identical definitions of "communication service record." A.R.S. §§ 13-3018 (ECA), 44-1376(1) (TUCSRA). The ECA contains additional provisions that refer to "communication service providers," but it does not separately ***limit*** its definition of "communication service record." *Id.* § 13-3001(3). Rather, the ECA's subpoena provisions illustrate that the Legislature meant for "communication service records" to refer to the kind of records that would be created and held by—and would thus need to be subpoenaed from—"communication service providers." Mot. at 7 (quoting A.R.S. §§ 13-3018(B), (D)(1)). Lowe's does not argue that there is a separate textual "requirement" present in the ECA that must be read into TUCSRA, only that the

two statutes' definitions must mean the same thing and the ECA's other provisions clarify any ambiguity they otherwise contain.

### 3. The legislative history favors Lowe's.

Finally, Plaintiff contorts TUCSRA's legislative history to argue the statute covers any form of "getting personal information under false pretenses." Opp. at 12. But Plaintiff again ignores the question of ***which*** personal information. Interpreting the same legislative history on which Plaintiff relies, courts conclude that "the precise purpose for which TUCSRA was enacted" was "to protect sensitive records maintained by communication service providers from being fraudulently obtained by unauthorized third parties." *Williams*, 2025 WL 1135160, at *4; *see also D'Hedouville*, slip op. at 4 ("TUCSRA was first enacted in 2006 to respond to concerns that additional security was needed to prevent unauthorized disclosure of information that was held by telecommunications carriers, not direct email marketing."); *Home Depot*, 2024 WL 5118416, at *5 (same). As Plaintiff herself notes, "the initial Telephone Records Act of 2006 specifically prohibited any person from procuring telephone records of Arizona residents through fraudulent or deceptive means," and was amended a year later "to include 'public utility records' and 'communication service records'"—not all personal records of all kinds. Opp. at 12. The aim of the statutory scheme to which TUCSRA belongs is unquestionably to prevent third parties from obtaining subscriber records created and maintained by telecommunications and utility providers.

### 4. Plaintiff fails to allege that Lowe's obtained records held by a provider of communication services.

Plaintiff argues in passing that she has sufficiently alleged that the information collected by Defendants' pixel technology was held by a communication service, but the Complaint says otherwise. Opp. at 8. The Complaint unambiguously asserts that "Salesforce and its hidden tracking pickle [sic] extracted ***from Plaintiff*** and other Arizona residents the records and information" at issue. Compl. ¶ 52 (emphasis added); *see also id.* ¶ 3 ("Defendants' hidden tracking pixels surreptitiously procured and collected records of, and information regarding, Plaintiff and Arizona residents[.]"). It does not allege that

Defendants took records maintained by Gmail, Yahoo, or another email provider about the provider's subscribers. Plaintiff appears to rely on the theory that if information is associated with an email at all, it falls within TUCSRA's ambit. But the statute does not protect information merely because a communication service provider might also possess that information. It protects information obtained ***from*** a communication service provider. Plaintiff's strained argument that all records in any way associated with an email must derive from a "communication service" is exactly the overbroad construction rejected in *Home Depot*, *Williams*, *D'Hedouville*, and every other civil TUCSRA case.

**B. Plaintiff fails to allege that Lowe's obtained any of the categories of information constituting a "communication service record."**

In the Opposition, Plaintiff explains for the first time which categories of "subscriber information" comprising a "communication service record" she claims Defendants have unlawfully procured. Opp. at 8-9, 12-15. None of these explanations matter, because TUCSRA applies only to records held by a communication service provider. Compounding that flaw, none of the information supposedly obtained by email pixels falls within any of the statute's enumerated categories of subscriber information. *See* A.R.S. § 44-1376(1). Her contrary arguments defy logic and the statutory text, only confirming that Lowe's overall reading of TUCSRA is the right one.

***"Electronic account identification."*** Plaintiff implausibly suggests that a person's location, IP address, and device type are "electronic account identification." Opp. at 9. This reading would require the Court to construe the statute to include any kind of information that could be used to identify someone electronically.[4] That is not what TUCSRA says: it refers specifically to identification of an "electronic account," which it suggests is similar to a "screen name." A.R.S. § 44-1376(1) ("electronic account identification ***and*** associated screen names" (emphasis added)). This might mean, for instance, a user's account number

[4] Such broad-reaching statutes exist in other jurisdictions. *See, e.g.*, Cal. Civ. Code § 1798.140 (regulating all "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household"). In Arizona, TUCSRA omits these terms.

for their internet service provider. But Plaintiff does not explain how any of the information she places in this category corresponds to a user's "electronic account" as the statute requires, rather than to the user herself (or to the user's electronic device, as in the case of IP address and device types). Plaintiff also asserts without elaboration that "the time [a putative class member] spent reading the email" constitutes "electronic account identification," but time spent reading a document is not any kind of identifier and Plaintiff gives no clue how it could be construed as one. Opp. at 9. Perhaps Plaintiff's email address could fairly be considered a "screen name," *see id.*, but interpreting TUCSRA to penalize Lowe's for using an email to collect the email address of ***the person to whom it sent that email*** after the person shared her email address with Lowe's only underscores the absurdity of Plaintiff's claim that the statute applies to anything other than records held by communication service providers.

***"Name" and "address."*** Plaintiff's claim that her IP address and email address constitute her "name" and "billing []address" appears to depend on her contention that Defendants are later able to associate these electronic coordinates with a natural person and physical location. Opp. at 9 (citing Compl. ¶¶ 49, 90); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 n.2 (9th Cir. 2020) (noting that an IP address is "a numerical identifier for each computer or network connected to the Internet"). TUCSRA does not, however, protect information that can be used to infer names and addresses—only names and addresses themselves. Plaintiff does not allege that Defendants could or did procure her actual name or address via email pixel technology (let alone that it obtained this information from a communication service provider).

***"Access logs."*** Relying on dictionary definitions and two cherry-picked external sources published years after TUCSRA's enactment and not alleged in the FAC, Plaintiff contends that information about when and from what device she viewed emails from Lowe's constitutes an "access log." Opp. at 13-14. On Plaintiff's own definition, though, her logic fails. She describes an access log as "***a file*** 'that records all events related to'" access to computer resources." Opp. at 13 (citation omitted) (emphasis added). But the

Complaint does not allege that Lowe's procured a file containing entries reflecting this information—rather, Plaintiff's theory is that Lowe's procured the kinds of information that she says can be found in an access log, like "the date and time of client access, the client IP address or hostname, and username." Opp. at 14. Here too, Plaintiff's attempt to stretch the statute beyond reason confirms that TUCSRA is meant to apply to the kinds of records collected and maintained by communication service providers, who presumably keep logs of when and how their customers access their services. *See also Home Depot*, 2024 WL 5118416, at *3 ("Plaintiff provides dictionary definitions for some terms in the definition, such as 'access' and 'log,' but she makes no attempt to define the key phrase 'communication service,' which modifies 'record,' or to explain what role that phrase plays in the TUCSRA."); *Williams*, 2025 WL 1135160, at *5 ("The statutory structure and language make clear that 'access logs' refers to records of a subscriber's access to communication services—not marketing metrics collected by retailers about email engagement.")

***"Records of the path of an electronic communication between the point of origin and the point of delivery."*** Plaintiff contends that all manner of routine email metadata is controlled by this portion of the "communication service record" definition: "when an email is opened and read, the recipient's location, how long the recipient read the email, whether they forwarded the email, and the type of device used by the recipient and the recipient's IP address." Opp. at 14. The Opposition does not explain this theory of liability. But on its face, none of this information pertains to the "path" that an email took "between" two points—only to what happened at the point of origin and at the point of delivery. To the extent Plaintiff advances a broader interpretation of the statutory text here, her argument would proscribe countless forms of internet-based communication that rely on computers exchanging basic information with one another to transmit messages. Indeed, on Plaintiff's reading of the statute, ***she herself*** violated TUCSRA when she "forwarded the emails" she received from Lowe's, since in so doing, she revealed to the recipient the path by which they had traveled from Lowe's email address to her own. Compl. ¶ 16. It cannot be that the

Legislature intended this result, and the absurdity that would follow from Plaintiff's construction again confirms that TUCSRA only governs records held by providers of communications services.

***"The nature of the communication service provided."*** Although Plaintiff argues in passing that she has alleged that Lowe's procured information in this category, she does not explain how. Opp. at 15. Instead, she again appears to misread Lowe's Motion as arguing that TUCSRA "limits liability to only a telephone company or a 'telecommunication provider.'" *Id.* Lowe's argument is that a record of the nature of a communication service provided must be a record reflecting that a subscriber receives email, telephone, internet, or some other communication service from the holder of the record. Mot. at 13. Plaintiff appears to be arguing that because Lowe's collected information about its marketing emails, it must know that she receives email services from a communications provider. This argument proves far too much: again, it would mean that anyone who sends an email on which a third party is copied violates TUCSRA by disclosing to the email's recipient that the third party subscribes to email services.

### C. The Complaint fails to state a claim under TUCSRA for additional reasons.

As Lowe's explained in the Motion, Plaintiff's failure to allege that Lowe's "knowingly" obtained her communication service records without her authorization separately dooms the Complaint, as does her failure to allege that she is a "customer." *See* Mot. at 14 (citing A.R.S. §§ 44-1376.01(A)(1), 44-1376.04(A)). The Opposition does not salvage either of these defects.

First, Plaintiff does not contest that TUCSRA criminalizes only knowing violations of the statute. A.R.S. §§ 44-1376.01(A)(1). The Opposition cites various general allegations that Plaintiff did not provide appropriate consent, *see* Opp. at 16 (citing Compl. ¶¶ 4, 5), but relies exclusively on "inferences" as to Lowe's knowledge. While the Complaint is heavy on conclusory assertions of Lowe's state of mind, such as that "[t]he objective of a spy pixel is to collect information without the knowledge of the recipient of the email," it

does not substantiate those assertions in a manner that crosses the line into plausibility and supports a reasonable inference. Compl. ¶ 39.

Second, Plaintiff argues that she "is not required to allege that she is a customer of a communication service provider in order to state a civil cause of action," but the statutory text says otherwise. Opp. at 17. A.R.S. § 44-1376.04(A) provides a private right of action only to "a customer whose communication service records" were obtained in violation of TUCSRA. This too warrants dismissal.

## III. CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss with prejudice.

Dated: June 5, 2025

OSBORN MADELON, P.A.

By: s/ David B. Rosenbaum
David B. Rosenbaum
Colin M. Proksel
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012

COOLEY LLP

Teresa Michaud, *pro hac vice*
Ariana E. Bustos, *pro hac vice*
355 South Grand Avenue, Suite 900
Los Angeles, California 90071-1560

Tiana Demas, *pro hac vice*
110 North Wacker Drive, Suite 4200
Chicago, Illinois 60606-1511

Reece Trevor, *pro hac vice*
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004

*Attorneys for Defendant Lowe's Home Centers, LLC*