Gregory J. Marshall (#019886)
Emily R. Parker (#036286)
SNELL & WILMER LLP
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
gmarshall@swlaw.com
eparker@swlaw.com

*Attorneys for Defendant Salesforce, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Ivonne Carbajal, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Lowe's Home Centers, LLC, a North Carolina limited liability company, and Salesforce, Inc., a Delaware corporation,

Defendants.

No. 2:25-cv-00041-DJH

**SALESFORCE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

SNELL & WILMER

Defendant Salesforce, Inc. ("Salesforce") submits this Reply in support of its Motion to Dismiss the First Amended Class Action Complaint.

## I. INTRODUCTION

Plaintiff's Response fails to address, much less refute, the legal and factual arguments presented in the Motion to Dismiss with respect to the lack of general personal jurisdiction over Salesforce and, thus, necessarily concedes that it is lacking here. As to whether Salesforce is subject to specific personal jurisdiction, Plaintiff's Response fails in two key respects. First, Plaintiff impermissibly utilizes group pleading to conflate the alleged actions of Lowe's and Salesforce by referring to them collectively as "Defendants" when it suits her. In doing so, Plaintiff fails to rebut the Ratcliff Declaration, properly submitted by Salesforce, clarifying what Salesforce did and did not do in relation to the alleged interactions with Plaintiff. The Ratcliff Declaration, when read in conjunction with Plaintiff's Complaint, leads to the inescapable conclusion that this Court lacks specific personal jurisdiction over Salesforce. Second, Plaintiff misreads and misapplies the Ninth Circuit's recent holding in *Briskin v. Shopify*, 2025 U.S. App. Lexis 9410 (9th Cir. Apr. 25, 2025), as Salesforce's alleged conduct here rises nowhere near the level of purposefully directed forum conduct Shopify exhibited in that case, and pursuant to which the Ninth Circuit found specific personal jurisdiction. Finally, Plaintiff's Response fails to provide any case law, legislative history or, for that matter, any legal authority, establishing that the Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376, *et seq.* ("TUCSRA") covers the emails at issue. On the contrary, every court that has considered this question has decisively concluded that it does not, and so should this Court.

## II. PLAINTIFF'S RESPONSE FAILS TO ESTABLISH THAT EXERCISING PERSONAL JURISDICTION OVER SALESFORCE IS APPROPRIATE

### A. The Court Lacks General Personal Jurisdiction Over Salesforce.

Plaintiff's Response simply reiterates the allegations that Salesforce is registered to do business in the State of Arizona and, accordingly, has appointed a statutory agent



SNELL & WILMER

for service of process in Arizona. Plaintiff likewise reiterates that Salesforce does some business in Arizona and that Salesforce operates a data center in Arizona. Plaintiff's Response, however, does nothing to address, much less controvert, the legal authority cited by Salesforce mandating that to establish general personal jurisdiction over a defendant, their contacts with that forum must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).

Absent extraordinary circumstances that do not apply here, companies are "essentially at home" in only two places: "the place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137. A company's place of incorporation is self-explanatory. Its "principal place of business" is its "nerve center," which is "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). And the Supreme Court has made clear that the nerve center "is a single place" that is often the one the public "considers . . . the corporation's main place of business." *Hertz*, 559 U.S. at 93.

Here, both parties agree and acknowledge that Salesforce is a Delaware corporation with its principal place of business in California. *See* Compl. at ¶ 22 ("Defendant Salesforce, Inc. … is a Delaware corporation with its principal place of business in San Francisco, California."); Dawn Ratcliff Declaration ("Ratcliff Decl.") at ¶ 2 ("Salesforce is a Delaware corporation, with its headquarters in San Francisco, California."). Accordingly, Salesforce is not subject to general jurisdiction in Arizona as Arizona is neither its state of incorporation nor its principal place of business. Thus, the Court lacks general jurisdiction over Salesforce.

Despite the simplicity of this analysis, Plaintiff nonetheless argues—without citation to legal authority—that "this Court has personal jurisdiction over [Salesforce] because … Salesforce is registered to do business in Arizona as a foreign corporation,



SNELL & WILMER

SNELL & WILMER

and … by having an authorized agent to accept service, Defendant has consented to accept service of suits that arise in Maricopa County." Doc. 23, p. 2. This argument is wrong. Registration to do business in a state does not constitute consent to general jurisdiction, because "[i]f it did, 'every corporation would be subject to general jurisdiction in every state in which it [is] registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 166 (2023) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016)); *see also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (rejecting personal jurisdiction over corporation based on corporation's appointment of agent for service of process, because "casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities."). Plaintiff's vague assertions aside, this Court lacks general personal jurisdiction over Salesforce.

**B. The Court Also Lacks Specific Jurisdiction Over Salesforce.**

Plaintiff's specific-jurisdiction argument fares no better. A court may exercise specific jurisdiction over a non-resident defendant only if that defendant has *sufficient, substantial contacts with the forum state* and the lawsuit "arise[s] out of or relate[s] to the defendant's contacts with the *forum*." *Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Daimler,* 571 U.S. at 127) (emphasis in original). As discussed at length in the Motion, the Ninth Circuit utilizes a three-part test to determine whether a non-resident defendant has sufficient contacts to be subject to specific personal jurisdiction: First, "[t]he non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of [the forum's] laws." *Morrill v. Scott Fin. Corp.,* 873 F.3d 1136, 1142 (9th Cir. 2017). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, "the

SNELL & WILMER

exercise of the jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.*[1] Plaintiff's assertion of jurisdiction fails all three prongs.

### ***1. Plaintiff has not established that Salesforce "purposefully directed" any activity to Arizona.***

Under the first prong, Plaintiff must show that Salesforce "purposefully directed [its] activities toward Arizona, or purposefully availed [itself] of the privilege of conducting activities there." *Morrill*, 873 F.3d at 1142. The Ninth Circuit's "analysis under the 'purposeful availment or direction' prong of the specific jurisdiction test turns on the nature of the underlying claims." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). For non-contract claims, the Ninth Circuit employs the purposeful direction test. *See Axiom Foods Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). "Purposeful direction 'requires that the defendant … have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Morrill,* 873 F.3d at 1142 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)). Plaintiff makes three arguments on the first prong of the specific-jurisdiction test. All three fail.

<u>First</u>, Plaintiff argues that Salesforce purposefully directed activity to Arizona by "sell[ing] and provid[ing] customer service relationship management software to companies doing business in and throughout Arizona[.]" Doc. 23, p. 2. This argument fails. The mere existence of a contract between Salesforce and a company that does business in Arizona is insufficient to confer personal jurisdiction over Salesforce. *See Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (holding that the "minimum contacts" required to establish specific jurisdiction over a defendant must be contacts "with the

---

[1] Under this test, "[t]he plaintiff has the burden of proving the first two prongs." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Morrill*, 873 F.3d at 1142. Only if the plaintiff succeeds in satisfying *both* of the first two prongs does the burden shift to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

forum State itself, *not* … with persons who reside there."); *id.* at 286 ("Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."); *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Thus, the mere assertion that Salesforce sells software to companies doing business in Arizona is insufficient to give rise to specific personal jurisdiction.

Second, Plaintiff argues that Salesforce purposefully directed activity to Arizona by "manag[ing] and operat[ing] a data center in the Phoenix, Arizona metropolitan area." Doc. 23, p. 2. This argument likewise fails. Plaintiff's claims do not arise from Salesforce's operation of a data center in Arizona, nor does Plaintiff attempt to establish any connection between the data center and the present lawsuit. It is well-established that "[s]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, *the very controversy* that establishes jurisdiction." *Bristol-Myers Squibb Co.,* 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added). A "defendant's general connections with the forum are not enough" because even "continuous activity" within a state does not "support the demand that [a] corporation be amendable to suits *unrelated* to that activity." *Id.* at 264 (emphasis added). Thus, the mere assertion that Salesforce operates a data center in Arizona cannot give rise to specific jurisdiction.

Third, Plaintiff argues that Salesforce purposefully directed activity to Arizona by "directly provid[ing] [Lowe's Home Centers, LLC ("Lowe's")] with technology that it knew would be used in Lowe's marketing emails and would be sent to its customers throughout the county," including possibly Arizona. Doc. 23, p. 9. This argument is unpersuasive. Plaintiff's allegation that Salesforce "provided" the tracking pixels to Lowe's does not establish Salesforce's purposeful direction of *any* injurious activity *at Arizona.* Salesforce does not control the content or recipients of emails that its



SNELL & WILMER

subscribers, including Lowe's, sends. *See* Ratcliff Decl. at ¶¶ 5, 9. Thus, Salesforce does not control to whom Lowe's emails are sent, whether Lowe's emails contain tracking pixels, or whether and how Lowe's chooses to notify its email recipients that Lowe's uses tracking pixels. *Lowe's* makes *all* of those decisions. *See id.* at ¶¶ 5, 9, 13. And Plaintiff cannot rely on the actions of *Lowe's* to establish specific personal jurisdiction over *Salesforce*. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (holding that "[u]nilateral activity of another party or third person" is insufficient to demonstrate purposeful direction and, therefore, cannot satisfy the first prong of the specific jurisdiction test); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (explaining that the "unilateral activity of another party or third person is not an appropriate consideration when determining whether *a defendant* has sufficient contacts with a forum State to justify an assertion of jurisdiction").

Plaintiff's reliance on *Briskin v. Shopify, Inc.*, 2025 U.S. App. Lexis 9410 (9th Cir. April 25, 2025), is misplaced. The plaintiff in that case, Briskin, was a California resident who brought a putative class action alleging the violation of various state and federal privacy laws against Shopify, a Canadian-based e-commerce platform. *Id.* at *1. Briskin purchased apparel from a Shopify-hosted online vendor via his mobile device. *Id.* Briskin alleged that, unbeknownst to him, Shopify processed the payment and, in connection with the transaction, surreptitiously embedded tracking cookies on his mobile device that allegedly harvested his personal information, which Shopify then allegedly monetized by compiling "consumer profiles" it sold to third parties. *Id.* at *2-3. The Ninth Circuit held that, because Shopify's geolocation technology allowed it to know Briskin's smartphone was in California when it installed cookies on his device, Shopify's conduct of intercepting Briskin's information deliberately targeted a California resident, meeting the purposeful direction requirement for specific jurisdiction. *Id.* at *14-15.

There are several key aspects of Shopify's conduct the Ninth Circuit relied upon in finding specific personal jurisdiction that are wholly absent here with respect to Salesforce. Shopify controlled <u>all aspects</u> of the interaction with the consumer: (1)



SNELL & WILMER

Shopify knew Briskin was in California; (2) Shopify drafted and disseminated the Privacy Policy to Briskin (that failed to disclose the implantation of the cookie on his mobile device); (3) Shopify knowingly caused the cookie to be implanted on Briskin's device without his consent; and (4) Shopify was in direct contact with Briskin throughout the transaction. Each of the foregoing facts were essential to the Ninth Circuit's conclusion that Shopify had "expressly aimed" its conduct towards California and, also, that there was a direct connection between Shopify, the forum and Briskin's claims. None of these key facts are present here.

Here, it is undisputed that Salesforce lacked any control whatsoever over the interaction with Plaintiff and had no direct contact with Plaintiff – whether related to the transaction or otherwise. Salesforce did not send any email to Plaintiff. *See* Ratcliff Decl. at ¶ 5. Salesforce did not know to whom Lowe's would elect to send any email, much less that it would send an email to Plaintiff in Arizona. *Id.* at ¶¶ 10-13. Salesforce did not draft the content of any email to Plaintiff or any disclosures that may (or may not) have been included regarding the pixel. *Id*. Salesforce did not control whether or under what circumstances Lowe's would elect to utilize the pixel in connection with any email to Plaintiff. *Id*. Salesforce, unlike Shopify, had no knowledge that the email with the pixel that Lowe's sent to Plaintiff would violate any Arizona law (as argued below, it did not). Indeed, Salesforce required Lowe's to comply with all applicable laws. *Id.* at ¶ 16.

In summary, other than the fact that both cases involve electronic information, there are no similarities between Shopify's conduct and Salesforce's conduct that would support a finding of specific jurisdiction over Salesforce here. Rather, the applicable standards when applied to Salesforce require a finding that Plaintiff has failed to establish specific jurisdiction over Salesforce requiring its dismissal pursuant to Rule 12(b)(2).

***2. The claims do not arise out of or relate to any forum-related activities of Salesforce.***

The Court does not need to reach the second prong because Plaintiff cannot establish the first. Regardless, Plaintiff cannot meet her burden on the second, because



SNELL & WILMER

Plaintiff is unable to demonstrate how her claims arise out of or relate to *any* of Salesforce's forum-related activities. The gravamen of Plaintiff's claim is that she received emails from Lowe's (after subscribing to receive them) that contained tracking pixels, that Salesforce provided the tracking pixels that Lowe's used, and those tracking pixels obtained certain information without Plaintiff's consent. *See* Compl. at ¶¶ 1, 3, 49. Salesforce does not control the content of its subscribers' emails (including whether they contain tracking pixels) or to whom those emails are sent, much less where. *See* Ratcliff Decl. at ¶¶ 5,8,13. Thus, there is *no* forum-related activity of Salesforce for Plaintiff's claim to have arisen out of or relate to. Plaintiff has accordingly failed to carry her burden of establishing the second prong of the specific personal jurisdiction test.

***3. The exercise of personal jurisdiction over Salesforce would be unreasonable.***

Finally, the exercise of personal jurisdiction over Salesforce would be unreasonable for the reasons discussed in the Motion, including because Salesforce did not "interject" itself into the affairs of Arizona, and requiring Salesforce to appear and defend itself in Arizona would be unfairly burdensome, as Salesforce is headquartered in California with minimal workforce in Arizona (Ratcliff Decl. at ¶¶ 2, 4).

In her Response, Plaintiff contends that the exercise of jurisdiction over Salesforce is reasonable, because Salesforce did "interject itself into the affairs of Arizona … by providing a platform that Lowe's would use to send emails to consumers throughout the country." Doc. 23, pp. 9-10. This argument is unpersuasive. Lowe's builds its own emails, uploads its own recipient lists, and initiates its own emails. Salesforce does not control the content of its subscribers' emails (including whether they contain tracking pixels) or to whom those emails are sent. *See* Ratcliff Decl. at ¶¶ 5,8,13. Thus, Salesforce cannot be deemed to have "interject[ed] itself into the affairs of Arizona."

Plaintiff further contends that "Plaintiff has brought her claim under a specific Arizona statute and would not be able to bring the claim anywhere else." Doc. 23, p. 10. Plaintiff fails to explain why she "would not be able to bring the claim anywhere else,"



SNELL & WILMER

which is Plaintiff's burden to prove. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d, 1122, 1133-34 (9th Cir. 2003) ("The plaintiff bears the burden of proving the unavailability of an alternative forum."). Indeed, the TUCSRA is the subject of lawsuits across the United States, including in California, New York, Massachusetts, Washington, and Pennsylvania.[2] And in this case specifically, both Delaware and California have at least an equal interest in adjudicating this dispute to ensure its corporate citizens like Salesforce comply with the law.

### C. Plaintiff's "Standing" Arguments Are Misdirected.

Plaintiff's repeated references to "standing" as somehow establishing "jurisdiction" over a defendant are misplaced. Standing is the justiciability doctrine grounded in the U.S. Constitution that limits the judicial branch's jurisdiction to hear a plaintiff's claim by generally requiring a plaintiff to have a personal stake in the litigation. *See* U.S. Constitution, Article III, Section 2, Clause 1 (the "case or controversy" clause). Salesforce did not argue in the Motion that the Complaint should be dismissed due to lack of standing. Rather, Salesforce seeks its dismissal pursuant to Rule 12(b)(2), on the basis that the Court does not have personal jurisdiction over Salesforce in this forum. These are two completely different legal arguments. Thus, Plaintiff's repeated insistence that she has "standing" to bring the instant claim in this Court is wholly unrelated to the issue of personal jurisdiction and should be disregarded.

## III. PLAINTIFF HAS NOT ALLEGED AND CANNOT ALLEGE A VIABLE TUCSRA VIOLATION

The crux of the parties' disagreement as to whether the Complaint alleges a claim for violation of the TUCSRA, centers on whether Plaintiff's information captured by the

[2] *See, e.g., Mills v. Saks.com LLC*, No. 1:23-cv-10638 (S.D.N.Y. Jan 6, 2025); *Camp v. Sephora USA Inc.*, No. 24-cv-07330-TLT (N.D. Cal. Jan. 24, 2025); *McGee v. Nordstrom Inc.*, No. 23-1875 (W.D. Wash. Dec. 6, 2023); *Campos v. TJX Cos., Inc.*, No. 24-11067 (D. Mass. Apr. 22, 2024); *Hartley v. Urb. Outfitters, Inc.*, No. CV 23-4891, 2024 WL 3445004 (E.D. Pa. July 17, 2024); *Segovia v. Burlington Coat Factory Warehouse Carp.*, No. 24-6730 (D.N.J. June 6, 2024).



SNELL & WILMER

pixel constitutes "a communication service record" procured from Plaintiff's "communication service provider." On the one hand, Plaintiff asserts that Salesforce's position that Lowe's is a home improvement retailer and not a communication service provider is "without merit." Plaintiff, however, cites no case law, legislative history or any other authority to support this bald assertion. While the method of communication here was electronic mail, Defendants would need to procure records regarding the provision of email services to Plaintiff to fall within the ambit of the TUCSRA. Plaintiff stubbornly refuses to recognize this distinction, which causes the conduct at issue to fall outside the scope of the TUCSRA. Indeed, Plaintiff's unsupported position, if adopted by this Court, would essentially sweep all records regarding any email communications under the TUCSRA's umbrella – an unworkable slippery slope with no end.

Salesforce, on the other hand, provides the Court with legislative history and many case citations, all uniformly supporting the conclusion that TUCSRA does not apply to these emails. The authorities provided by Salesforce firmly establish that a "communication service provider" is a "person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services" such as internet service providers that deliver the underlying actual communication service and not "retailers engaged in selling goods and services who communicate with customers by email." *Carbajal v. Home Depot U.S.A., Inc.*, No. CV-24-00730, 2024 U.S. Dist. LEXIS 226740, *3 (D. Ariz. Dec. 16, 2024) (quoting A.R.S. §13-3001(3)).

Salesforce's legal authority also decisively establishes that the nature of Plaintiff's information at issue here is not a "communication service record" that falls under the ambit of TUCSRA, as the definition of "communication service record" applies only to "subscriber information." A.R.S. § 44-1376(1) ("'Communication service record' includes *subscriber information*, including …") (emphasis added); *see also Carbajal*, 2024 U.S. Dist. LEXIS 226740, *3 ("communication service record … refers to records communication service providers maintain about their subscribers."); *see also*

SNELL & WILMER

*D'Hedouville v. H&M Fashion USA, Inc.*, No. C20243386, at *4 (Ariz. Super. Ct. Oct. 11, 2024) ("Information collected by a tracking pixel in a marketing email—including when an email was opened, how long it was opened, the device used, and the associated IP address—is not a communication service record as defined by the [TUCSRA].").

As discussed in the Motion, every court that has considered this issue has held that the TUCSRA does not apply in this situation. *See, e.g., Carbajal v. Home Depot U.S.A., Inc.*, No. CV-24-00730, 2024 U.S. Dist. LEXIS 226740, *3 (D. Ariz. Dec. 16, 2024); *D'Hedouville v. H&M Fashion USA, Inc.*, No. C20243386, at 4 (Ariz. Super. Ct. Oct. 11, 2024); *Mills v. Saks.com LLC*, No. 1:23-cv-10638 (S.D.N.Y. Jan 6, 2025); *Smith v. Target Corporation, et al.*, No. CV 2024-025462 (Ariz. Super. Ct. Jan. 10, 2025); *Camp v. Sephora USA Inc.*, No. 24-cv-07330-TLT (N.D. Cal. Jan. 24, 2025); *Williams v. Pacific Sunwear of California LLC*, No. CV-24-02015-PHX-JJT (D. Ariz. Apr. 16, 2025); *Encinas v. Office Depot, LLC*, No. CV 2024-02393 (Ariz. Super. Ct. May 7, 2025). Literally, all of the authorities on this subject directly contradict the viability of Plaintiff's claim.

Plaintiff's only argument is that the decisions above are either "currently on appeal" or non-binding, and therefore urges the Court, without supporting authority, to be the very first to rule differently. Doc. 23, pp. 11-12. The fact that a decision is on appeal does not make it incorrect. The complete body of available authority provides that Plaintiff has failed to state a claim for violation of the TUCSRA upon which relief may be granted and, as a result, the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons and for those set forth in its Motion, Salesforce respectfully requests that the Court dismiss Salesforce for lack of personal jurisdiction under Rule 12(b)(2), or alternatively dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice, under Rule 12(b)(6).

SNELL & WILMER

DATED this 5th day of June, 2025.

SNELL & WILMER L.L.P.

By: *s/ Emily R. Parker*

Gregory J. Marshall
Emily R. Parker
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556

*Attorneys for Defendant Salesforce, Inc.*

SNELL & WILMER